Stephanie POSTON, Plaintiff-Appellant,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY,
Plymouth Rock Campground, Ltd., Jake &
Phyllis Schmitt,
Badger Mutual Insurance Co., Thomas J. Coyne,
Thomas Daniel Coyne,
The Continental Insurance Company,
DuWayne Bruckner, Daniel Bruckner, Clinton Kollauf,
Lita Burmeister, Associated Hospital Services, Inc. and
Economy Fire & Casualty Company,
a foreign corporation, Defendants,

BADGER MUTUAL INSURANCE COMPANY and
DuWayne Bruckner, Defendants-Respondents.†

Court of Appeals

*No. 81–496.  Argued December 29, 1981.—Decided March 25, 1982.*
(Also reported in 320 N.W.2d 9.)

† Petition to review denied.

For the plaintiff-appellant there was a brief by *Milton S. Padway* of *Padway & Padway* of Milwaukee. Oral argument by *Milton S. Padway*.

For the defendants-respondents there were briefs by *Robert E. Wrenn* of *Gibbs, Roper, Loots & Williams* of Milwaukee and *Todd M. Weir* of *Otjen & Van Ert, S.C.* of Milwaukee. Oral argument by *Robert E. Wrenn* and *Todd M. Weir*.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. Appellant Stephanie Poston appeals from summary judgments granted in favor of the respondents Badger Mutual Insurance Company and DuWayne Bruckner. The trial court found in favor of Badger Mutual, holding that a conviction for injury by conduct regardless of life triggered a policy exclusion based on intentional or expected acts, thereby foreclosing a civil suit. The court also found for Bruckner, holding that, as a noncustodial parent, he did not have legal custody over his son so as to make him liable for his son's conduct under sec. 895.035(1), Stats. Since we find both that the law governing Badger Mutual's liability is unclear and that there are competing inferences which can arise from the facts, we reverse the summary judgment as to

Badger Mutual. We affirm the summary judgment as to DuWayne Bruckner because there are no unclear issues of fact or law.

Ms. Poston was injured on June 5, 1977, at the Plymouth Rock Campground in the vicinity of the Road America race track. Activities during race weekends are, judging from the facts, not for the faint of heart. Apparently, vehicles are burned with some regularity in an area known as "the pit."

On the weekend in question, a friend of Poston's tried to change a flat tire in the pit while onlookers chanted, "Burn the car!" As a result, various fracases erupted, one of them between Ms. Poston and another woman. While the two struggled, they were approached by Thomas Coyne, the insured of Badger Mutual. Coyne picked up a gasoline can and "sloshed" it on the women. Another onlooker, allegedly Daniel Bruckner, ignited it, and Poston suffered burns.

Before this civil case was instituted, Coyne was convicted of party to a crime of injury by conduct regardless of life, pursuant to secs. 939.05(1) and 940.23, Stats. Coyne's liability policy from Badger Mutual excluded coverage for any injuries which were "expected or intended from the standpoint of the insured."

In the case at bar, the trial court granted summary judgment in favor of Badger Mutual holding that, as a matter of law, Coyne's criminal conviction answered the question of expectation under the policy exclusion. The trial court admitted the conviction under sec. 908.03(22), Stats., which allows the admission of evidence of a final criminal conviction to be used to prove any fact essential to sustain the judgment.

The trial court also granted a summary judgment in favor of DuWayne Bruckner, father of Daniel Bruckner who was alleged to have been involved in Poston's injuries. The trial court found that, since the Bruckners

were divorced and Mrs. Bruckner had legal custody of Daniel, a minor, Mr. Bruckner could not be held liable for the acts of his son. Poston appeals from both of these summary judgments.

On appeal, Poston first challenges the trial court's granting of summary judgment in favor of Badger Mutual based exclusively on Coyne's conviction for injury by conduct regardless of life, pursuant to sec. 940.23, Stats. We agree with Poston that this was error and, accordingly, reverse.

First, there can be no question that the trial court based its decision solely upon the criminal conviction. In his decision, the trial judge concluded by saying that "[s]ince that issue [expectation of injury] was necessarily decided in the criminal case it should be accepted as conclusive proof in this civil action arising out of the same conduct on the part of Thomas Coyne."

Next, we must examine the elements of the crime of injury by conduct regardless of life and determine whether a conviction conclusively determines that the insurance exclusion is activated.

Section 940.23, Stats., states as follows:

INJURY BY CONDUCT REGARDLESS OF LIFE. Whoever causes great bodily harm to another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class C felony.

The elements of the offense were set out in *Randolph v. State,* 83 Wis. 2d 630, 641, 266 N.W.2d 334, 339 (1978):

(1) That the victim's injuries amounted to great bodily harm; (2) that the defendant's conduct was imminently dangerous to another; (3) that his conduct was of such a character that it evinces a depraved mind regardless of human life; and (4) that there was a relation of cause and effect between the victim's injuries and the defend-

ant's conduct imminently dangerous to another and evincing a depraved mind, regardless of human life.

As the trial judge here correctly characterized it, intent is not an element of the crime. Therefore, the policy exclusion for bodily injury which is "intended from the standpoint of the insured" is not established by the conviction. This conclusion is further bolstered by *Tomlin v. State Farm Mutual Automobile Liability Insurance Co.*, 95 Wis. 2d 215, 222, 290 N.W.2d 285, 289 (1980), which stated that a conviction for endangering safety by conduct regardless of life (which likewise requires conduct evincing a depraved mind) is not proof that a defendant acted intentionally.

It is clear, therefore, that, if anything, this conviction could only trigger the disjunctive "expected" language of the policy exclusion. We find, however, that it is insufficient to do so.

While the clause, "evincing a depraved mind," connotes more than mere negligence or recklessness, *State v. Weso*, 60 Wis. 2d 404, 410, 210 N.W.2d 442, 445 (1973), we are not persuaded that, as a matter of law, conduct evincing a depraved mind necessarily precludes coverage for injuries which were "expected . . . from the standpoint of the insured."

Both the trial court and Badger Mutual rely heavily upon *Pachucki v. Republic Insurance Co.*, 89 Wis. 2d 703, 278 N.W.2d 898 (1979). There, our supreme court found an identical exclusion clause to be unambiguous, thereby preventing construction of it against the insurer. *Id.* at 707–08, 278 N.W.2d at 901. Further, the court there quoted the trial court's finding that "[w]here coverage is excluded if bodily injury is 'intended or expected' by the insured, such exclusion is inapplicable if and only if the insured acts without any intent or any expectation of causing any injury, however slight." *Id.* at 714, 278 N.W.2d at 904. The explanation of the policy

exclusion does not support this summary judgment, however, since neither intent to cause injury nor expectation of injury is an element of the crime of injury by conduct regardless of life.

The question of the distinction in meaning between "intended" and "expected" in this state has apparently not been conclusively determined. "Expected" has often been found to suggest "a high degree of certainty." *Aetna Casualty & Surety Co. v. Martin Brothers Container & Timber Products Corp.,* 256 F. Supp. 145, 150 (D. Or. 1966) ; *Vanguard Insurance Co. v. Cantrell,* 503 P.2d 962, 965 (Ct. App. Ariz. 1973) ; *Jones v. Norval,* 279 N.W.2d 388, 390 (Neb. 1979) ; *State Farm Fire & Casualty Co. v. Muth,* 207 N.W.2d 364, 366 (Neb. 1973). Moreover, Minnesota, for one, has declared there to be "no substantial distinction in meaning" between exclusions for injury "caused intentionally by or at the direction of the insured" and those for injury "expected or intended from the standpoint of the insured." *Continental Western Insurance Co. v. Toal,* 244 N.W.2d 121, 124 n. 1 (Minn. 1976) ; *contra, Farmers Automobile Insurance Association v. Medina,* 329 N.E.2d 430, 432 (Ill. App. 1975).

*Pachucki* would appear to put Wisconsin in a position at least analogous to, if not coterminous with, that adopted by Minnesota in *Toal.* During its discussion of ambiguity (or the lack of it) in the policy exclusion, the *Pachucki* court had occasion to discuss the reasonable construction of the clause. Although the exclusion there included the "intended or expected" language found in the case at bar, the court stated that "a reasonable person in the position of the insured would interpret the policy language as specifically *applying only to injuries intentionally caused."* (Emphasis added.) *Pachucki,* 89 Wis. 2d at 708, 278 N.W.2d at 901.

While this may not conclusively demonstrate that "intended" and "expected" are absolutely synonymous in Wisconsin with respect to policy exclusions, it does persuade us that the difference between them, if there is one, is sufficiently subtle so as to militate against basing a summary judgment upon it. The trial judge properly acknowledged that the criminal conviction could not be relied upon to show intent; he did, however, rely upon it to show expectation. The trial judge concluded the decision by stating:

Under the circumstances while Thomas Coyne may have lacked the specific intent to burn the victim himself, the jury finding means that he had a general intent to do the act he committed in furtherance of the ultimate result with the consciousness of the nature of the act and the probable result which followed immediately.[1] He must have foreseen that the act which resulted in the burning was likely or in other words, that it was expected from his viewpoint. The jury in the criminal case under the instructions it was given did squarely meet the question of expectation or foreseeability.

Since that issue was necessarily decided in the criminal case it should be accepted as conclusive proof in this civil action arising out of the same conduct on the part of Thomas Coyne. [Footnote added.]

We are not persuaded that the trial court's characterization of "expectable" and "foreseeable" as synonymous is an apt characterization of law. If foreseeability of injury alone were enough to activate the policy exclusion, then many acts of mere negligence would be excluded.

---

[1] While the above references to general and specific intent are derived from *State v. Weso,* 60 Wis. 2d 404, 411–12, 210 N.W.2d 442, 445–46 (1973), we are persuaded that the already-cited language from *Tomlin v. State Farm Mut. Auto Ins. Co.,* 95 Wis. 2d 215, 222, 290 N.W.2d 285, 289 (1980), governs here and that no inference of intent may be drawn from a conviction dependent upon the finding of a depraved mind.

We do not read the clause to exclude both intentional *and* negligent acts. The *Pachucki* court characterized the exclusion as "specifically applying only to injuries intentionally caused." 89 Wis. 2d at 708, 278 N.W.2d at 901. To so broaden it as to exclude foreseeable injuries is unjustified.

Finally, we must look to the nature of a summary judgment itself. Summary judgment is a drastic remedy to be applied only when it is perfectly plain that there is no substantial issue to be tried. *De Bonville v. Travelers Insurance Co.,* 7 Wis. 2d 255, 260, 96 N.W.2d 509, 512 (1959). In *Mulvaney v. Tri State Truck & Auto Body, Inc.,* 70 Wis. 2d 760, 763, 235 N.W.2d 460, 463 (1975), our supreme court cited *Edelbeck v. Barnes,* 63 Wis. 2d 240, 243, 216 N.W.2d 551, 553 (1974), for a statement on the appropriate use of summary judgment: "However, in those cases where the material facts are not in dispute, *no competing inferences can arise, and the law that resolves that issue is clear* and overrides any other issues either factual or legal which may appear, then summary judgment should be granted." (Emphasis added.) Here, we are persuaded that the emphasized requirements were not met. Coyne's actions do allow for the inference that he acted without intention or expectation of injury. Moreover, the distinction in Wisconsin between "intended" and "expected" for policy exclusion purposes cannot be said to be clear. Therefore, summary judgment as to Coyne was inappropriate here.

Since in our review of a summary judgment, we apply the standards in sec. 802.08, Stats., in the same manner as would a trial court, *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980), we cannot say on the strength of the record before us that Badger Mutual is entitled to a summary judgment as a matter of law. Sec. 802.08(2), Stats. We

cannot accept Badger Mutual's contention, based on its reading of *Pachucki*, that Coyne's acts were done with the intention of causing injury or with the expectation that some injury was substantially certain to follow. It may well be that, after a trial on the merits, such a determination may be made. But such is not our task on appeal. As our supreme court stated in *Peterson v. Maul*, 32 Wis. 2d 374, 381, 145 N.W.2d 699, 704 (1966): "The plaintiff may be confronted with a most difficult task in proving [his case] but he should not be foreclosed by summary judgment from attempting to do so."

Accordingly, we reverse the trial court's granting of summary judgment in favor of Badger Mutual on this issue and remand for a trial. We are not constrained, therefore, to address other issues raised on appeal relating to the granting of this summary judgment.

Poston also appeals from the summary judgment in favor of DuWayne Bruckner. Daniel Bruckner, the minor son of DuWayne and JoAnne Bruckner, was alleged to have been materially involved in the injury to Poston. The Bruckners were divorced in January of 1976, and Daniel lived with his mother from that time through the time of the incident in question. DuWayne did have visitation rights, however.

In her amended complaint, Poston alleged that Du-Wayne "knowingly permitted and ratified" Daniel's going to Road America that weekend and that he "consented to and ratified" the subsequent actions of Daniel on the day of the incident. The trial court granted a summary judgment in DuWayne's favor, holding there to be neither common law liability on the strength of *Seibert v. Morris*, 252 Wis. 460, 32 N.W.2d 239 (1948), nor any liability arising from the custody statutes existing at the time of the Bruckners' divorce. We agree with the trial court's decision and affirm the summary judgment in favor of DuWayne Bruckner.

On appeal, Poston does not challenge the determination concerning common law liability, but rather premises her argument upon what she characterized as "a sort of vicarious liability" created by sec. 895.035(1), Stats., which reads as follows:

The parent or parents having legal custody of an unemancipated minor child, in any circumstances where he or they may not be otherwise liable under the common law, shall be held liable for damages to property or for personal injury attributable to a wilful, malicious or wanton act of the child not to exceed $1,000, in addition to taxable costs and disbursements directly attributable to any wilful, malicious or wanton act of the child.

Poston contends that DuWayne Bruckner had legal custody of Daniel at the time of the incident. We cannot agree.

Apparently, Poston would have us hold that as long as a parent's rights are not terminated, he or she retains legal custody of the child, regardless of which parent gained custody in the divorce action. Since sec. 895.035 (1), Stats., is in derogation of the common law, it is to be strictly construed. *State ex rel. Chain O'Lakes Protective Association v. Moses*, 53 Wis. 2d 579, 583, 193 N.W.2d 708, 710 (1972). To give "legal custody" the expansive meaning which the appellant suggests would violate this canon of construction.

Poston also characterized the divorce decree as one which "seemed to acknowledge the continuing 'legal custody' which DuWayne Bruckner had over Daniel Bruckner." The divorce decree is not a part of the record before us. However, both parties appear to agree that the divorce decree granted "custody," rather than "care, custody and control" to JoAnne Bruckner. Poston would have this court understand the decree to somehow vest legal custody in both parents. We are not so persuaded.

The statutes operative at the time of the divorce did not allow for joint custody: "In rendering a judgment

of . . . divorce . . . , the court may . . . give the care and custody of the children of such marriage to *one of the parties to the action. . . .*" Sec. 247.24 (1), Stats. (1973). We agree with the trial court's decision that in this case, "custody" is indistinguishable from "care, custody and control."

Finally, Poston urges us to use the definition of "legal custody" found in the Childrens' Code, sec. 48.02 (12), Stats., which reads as follows:

"Legal custody" means a legal status created by the order of a court, which confers the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care, subject to the rights, duties and responsibilities of the guardian of the child and subject to any existing parental rights and responsibilities and the provisions of any court order.

In fact, Bruckner and the trial court also rely upon this definition as well. This court is not of the opinion that this definition of "legal custody" is at all advantageous to Poston's position. We adopt the trial court's reading of it, which holds that legal custory was vested in JoAnne Bruckner alone for purposes of the application of sec. 895.035 (1), Stats.

Since we find no substantial issues of fact nor any reasonable inferences to be drawn from the facts which would support Poston's position, we affirm the trial court's granting of a summary judgment as to DuWayne Bruckner.

*By the Court.*—Judgments affirmed in part; reversed in part and remanded.