James and Shirley RABY, Individually, and as Special Administrator of the Estate of Steven Raby, Deceased, Plaintiffs-Respondents-Cross Appellants,

v.

Terrance Lee MOE, Defendant-Cross Respondent,

Victor GREEN, Defendant,

HERITAGE MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross Respondent–Petitioner.

Supreme Court

*No. 88-0491. Submitted on briefs October 5, 1989.—Decided January 17, 1990.*

(Also reported in 450 N.W.2d 452.)

For the defendant-appellant-cross respondent-petitioner, there were briefs by *Barrett J. Corneille, Virginia L. Newcomb,* and *Bell, Metzner, Gierhart & Moore, S.C.,* Madison.

For the plaintiffs-respondents-cross appellants, there was a brief by *Richard E. Rosenberg,* and *Nowlan & Mouat,* Janesville.

For the defendant-cross respondent, there was a brief by *David A. Schumann,* and *Brennan, Steil, Basting & MacDougall, S.C.,* Janesville.

LOUIS J. CECI, J. This case is before the court on petition for review of a decision of the court of appeals, *Raby v. Moe,* 149 Wis. 2d 370, 441 N.W.2d 263 (Ct. App. 1989), which affirmed a judgment of the Rock county circuit court, Mark J. Farnum, Circuit Judge. The respondents, James and Shirley Raby, commenced a civil action for the death of their son, Steven Raby, who was shot and killed during an armed robbery of the liquor store where he worked. The respondent, Terrance Moe (Moe), participated in the commission of the robbery and was named as a defendant in the action. Moe was insured under a policy of homeowners insurance issued by the petitioner, Heritage Mutual Insurance Company (Heritage), at the time of the robbery. Heritage was also named as a defendant in the action.

Heritage moved for summary judgment, arguing that its policy of insurance did not provide coverage for damages resulting from Raby's death because of an exclusion to coverage for injury "expected or intended" by the insured. The circuit court denied the motion, and

the case ultimately proceeded to trial. At the trial, a jury found that Moe was negligent in his participation in the robbery and that his negligence was a cause of injury to Raby. The jury also found that Moe neither expected nor intended that Raby would be injured during the robbery. The circuit court entered judgment on the verdict, holding Moe and Heritage liable for civil damages for the death of Raby. The court of appeals affirmed the judgment.

The dispositive issue before this court is whether the circuit court should have granted Heritage's motion for summary judgment on the grounds that the policy exclusion for injury "expected or intended" by the insured bars coverage for damages resulting from Raby's death. We find that Moe's intentional participation in the armed robbery was so substantially certain to result in some type of bodily injury that the circuit court should have inferred the intent to injure necessary to invoke the policy exclusion on the facts of this case as a matter of law.[1] Accordingly, we reverse the decision of the court of appeals, which affirmed the judgment of the circuit court.

The basic facts of this case are undisputed. Jeff Thompson came up with a plan to rob a liquor store in Janesville, Wisconsin. During the afternoon of January 23, 1986, Thompson spoke with Victor Green and Moe

---

[1]On review, Heritage raises three additional issues. Those issues include whether the policy exclusion applies in this case as a matter of law either because the undisputed facts demonstrate that Moe intended to inflict bodily injury on Raby by way of emotional distress or assault or because the "doctrine of fortuity" precludes insurance coverage for damages resulting from Moe's criminal acts and, alternatively, whether the circuit court erred in refusing Heritage's requested jury instructions. We do not reach these issues.

and asked them to assist him in committing the robbery. Green agreed to provide Thompson with a 12-gauge shotgun and shells to use during the robbery, and Moe agreed to drive the "getaway" car.[2] That evening, Thompson, Moe, and Green met at Green's house to prepare for the robbery. At approximately 7:30 p.m., Moe drove Thompson to the liquor store and parked in an adjacent parking lot. He waited in the car while Thompson entered the store alone with the loaded shotgun, took money from the cash register, and shot and killed Steven Raby, the store clerk. Thompson, Moe, and Green were arrested for the murder of Raby. Moe testified concerning the facts of the robbery at the criminal trial of Thompson. Thompson was convicted of first-degree murder. Moe and Green pleaded guilty to second-degree murder, party to a crime, pursuant to secs. 940.02(2) and 939.05, Stats. 1985–86.[3]

---

[2]Thompson also asked Charles Garnett to assist him in the commission of the robbery. Garnett declined to participate in the crime.

[3] **940.02 Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

. . .

(2) As a natural and probable consequence of the commission of or attempt to commit a felony.

**939.05 Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime

At the time of the robbery, Moe was an insured under a policy of homeowners insurance issued by Heritage to Moe's parents. The policy provided:

> If a claim is made or a suit is brought against any insured for damages because of bodily injury . . . caused by an occurrence to which this coverage applies, we will:
>
> a. pay up to our limit of liability for the damages for which the insured is legally liable . . .

An occurrence was defined in the policy as an accident. The policy also contained an exclusion to coverage for damages arising from bodily injury "expected or intended by the insured." Bodily injury was defined in the policy as bodily harm.

James and Shirley Raby commenced a civil action on their own behalf and on behalf of the estate of Steven Raby, their son, seeking damages for Steven's death. Moe and Heritage were named as defendants in the action.[4] The complaint alleged that Moe was careless and negligent in planning and executing the robbery and that his negligence caused the injuries and death of Steven Raby.

which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

[4]Thompson, Green, Garnett, and West American Insurance Company, Garnett's insurer, were also named as defendants in the action. The case proceeded to trial solely on the Rabys' claim against Moe and Heritage, as both Green and Thompson allowed default judgments to be taken against them, and Garnett and his insurer settled with the Rabys prior to trial.

Heritage filed a motion for summary judgment, arguing that it could not be held liable for damages resulting from Raby's death by virtue of an exclusion in its policy of insurance for bodily injury "expected or intended by the insured." Heritage maintained that the intent to injure necessary to invoke the exclusion could be inferred from the nature of Moe's intentional act of aiding and abetting the armed robbery as a matter of law. The circuit court denied the motion, and the case ultimately proceeded to trial. A jury found that Moe was negligent with respect to the events of January 23, 1986, and that his negligence was a cause of injury to Raby. The jury further found that Moe neither expected nor intended that Raby would be injured during the robbery. Heritage renewed its motion for summary judgment in motions after verdict. The circuit court denied the motion and entered judgment assessing damages against Moe and Heritage for the death of Steven Raby.

Heritage appealed to the court of appeals, which affirmed the judgment of the circuit court. The court of appeals found that the intent to inflict injury which triggers the policy exclusion is a question of fact which was properly submitted to the jury. *Raby,* 149 Wis. 2d at 380. The court held that there was sufficient evidence presented at trial to support the jury verdict and that the circuit court properly ruled, on the basis of that verdict, that the policy exclusion did not apply. *Id.* at 381. Heritage petitioned this court for review of the decision of the court of appeals, which we granted.

Heritage argues that the intent to injure which invokes the policy exclusion for injury "expected or intended" by the insured may be inferred on the facts of this case as a matter of law. We construe Heritage's argument as asserting error in the circuit court's failure

to grant summary judgment on that basis. Summary judgment may be used to address issues of insurance policy coverage. *Jones v. Sears Roebuck & Co.*, 80 Wis. 2d 321, 325, 259 N.W.2d 70 (1977); *Backhaus v. Krueger,* 126 Wis. 2d 178, 180, 376 N.W.2d 377 (Ct. App. 1985). When called upon to review the denial of a summary judgment motion, we apply the standards set forth in sec. 802.08, Stats., in the same manner as the circuit court. *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831 (1980). A motion for summary judgment should be granted by the circuit court where the pleadings, depositions, affidavits, and other papers on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* sec. 802.08(2).

We find that there is no dispute of the material facts in this case. The record made on the motion for summary judgment reveals that Moe drove Thompson to the liquor store to perpetrate the armed robbery and that he pleaded guilty to party to a crime of second-degree murder as a result of his involvement in the robbery. The record also reveals that Moe was aware that Thompson planned to use a loaded shotgun during the robbery and that he knew that Thompson entered the liquor store with the shotgun in order to effectuate the robbery. Further, there is no dispute that Moe was insured under the terms of the homeowners insurance policy issued by Heritage to Moe's parents at the time of the robbery. Based on these undisputed facts, we review the legal issue presented in this case. We will reverse the circuit court's denial of summary judgment if it has incorrectly decided that issue. *Prince v. Bryant,* 87 Wis. 2d 662, 666, 275 N.W.2d 676 (1979).

Our review of the applicability of the policy exclusion to the facts of this case is guided by the principles set forth by this court in *Pachucki v. Republic Insurance Co.,* 89 Wis. 2d 703, 278 N.W.2d 898 (1979). In *Pachucki,* this court interpreted a policy exclusion for bodily injury "expected or intended from the standpoint of the insured." The court noted that in order for the exclusion to preclude insurance coverage in a given case, two requirements must be met. First, the insured must intentionally act, and, second, the insured must intend some injury or harm to follow from that act. *Id.* at 710.

In the instant case, there was no factual issue raised on the motion for summary judgment concerning Moe's intent to participate in the crime which resulted in the death of Steven Raby. Moe's testimony at the criminal trial of Jeff Thompson indisputably established that Moe willingly and actively assisted Thompson in the commission of the armed robbery by driving the getaway car. Moe's intent to act is further established in this case by his voluntary plea of guilty to party to the crime of second-degree murder, contrary to sec. 940.02 and sec. 939.05, Stats. This court has stated that a plea of guilty constitutes an unqualified, express admission by the defendant which may be used against him in a subsequent civil action. *See Cross v. State,* 45 Wis. 2d 593, 599, 173 N.W.2d 589 (1970); *Lee v. State Board of Dental Examiners,* 29 Wis. 2d 330, 334, 139 N.W.2d 61 (1966) (discussing the effects of a plea of *nolo contendere* in relation to a guilty plea). Moe's plea serves as an admission that he intentionally acted to aid and abet the commission of the armed robbery. Having concluded that Moe's intent to act is established in this case, we

turn to the question of whether Moe intended some injury or harm to follow from his intentional act.

The intent to inflict injury which invokes an intentional acts exclusion may be actual or may be inferred from the nature of the insured's intentional act. *Pachucki,* 89 Wis. 2d at 709. Once it is determined that the insured intended some injury or harm to the victim, the exclusion will preclude coverage even though the actual harm which occurs is different in character or magnitude from that intended. *Id.* at 714, citing with approval *Butler v. Behaeghe,* 37 Colo. App. 282, 548 P.2d 934, 938 (1976). In discussing the intent which must be proven to invoke a policy exclusion for intentional acts, the *Pachucki* court stated:

> '. . . [I]t is an intent to bring about a result which will invade the interests of another in a way that the law will not sanction . . ..
>
> '. . .
>
> 'Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. *The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it . . ..*'

*Id.* at 711 (emphasis added), quoting Prosser, Law of Torts at 31–32 (4th ed. 1971).

111

The question of whether the insured intended injury or harm to result from his intentional acts is a question of fact. *Id.* The issue which we address in this case is whether that fact may be inferred by a court as a matter of law under appropriate circumstances. Although this issue is one of first impression in this court, the court of appeals had occasion to consider whether the intent to injure necessary to invoke an intentional acts exclusion could be inferred by a court as a matter of law where the minor victim of a sexual assault and her parents commenced a civil action against the perpetrator and his homeowners insurer for damages resulting from the assault. *K.A.G. v. Stanford,* 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988).

The court of appeals in *K.A.G.* interpreted the above-quoted language in *Pachucki* as permitting a court to infer an intent to injure on behalf of the insured actor in those narrow circumstances in which the degree of certainty that the insured's intentional conduct will cause injury is sufficiently great to justify the inference as a matter of law. *Id.* at 163. The court of appeals concluded that acts of sexual molestation against a minor victim are so substantially certain to result in injury to the minor that the law will infer an intent to injure on behalf of the insured without regard to his claimed intent. *Id.* at 165. Accordingly, the court affirmed the circuit court's grant of summary judgment for the insurer and held that the policy exclusion for intentional acts applied to the facts of that case as a matter of law. *Id.*

We agree with the decision of the court of appeals in *K.A.G.*,[5] and we believe that the rule set forth in that case is applicable whenever the criminal conduct of the insured is of such a dangerous character as to impose a substantial threat to the well-being and safety of innocent victims caught in the midst of that criminal conduct. In the instant case, Thompson, Moe, and Green conspired to commit an armed robbery and agreed that that robbery would be carried out with a loaded 12-gauge shotgun. On these facts, we do not think that it can reasonably be said that the death of Steven Raby occurred merely by accident. Moe must be held to know the substantial risk of injury inherent in his criminal wrongdoing and cannot expect his homeowners insurer to provide coverage for damages resulting from that wrongdoing simply by saying, after the fact, that he did not intend for any harm to result.

The Rabys and Moe argue that the question of Moe's intent to injure Steven Raby was properly submitted to the jury pursuant to *Poston v. U.S. Fidelity & Guaranty Co.*, 107 Wis. 2d 215, 320 N.W.2d 9 (Ct. App. 1982). In that case, the plaintiff was injured when the insured "sloshed" gasoline on her and a third party unexpectedly and independently lit a match, causing serious burns. The circuit court granted summary judgment for the insurer on the ground that the insured's subsequent conviction for party to a crime of injury by conduct regardless of life triggered the policy exclusion for intentional or expected acts. *Id.* at 216. The court of

---

[5] *See N.N. v. Moraine Mutual Ins. Co.*, 153 Wis. 2d 84, 450 N.W.2d 445 (1990), where this court approved and adopted the approach taken by the court of appeals in *K.A.G.* in an insurance coverage case involving the intentional sexual molestation of a minor.

appeals reversed, holding that because intent to injure was not an element of the crime for which the insured was convicted, summary judgment was improperly granted on that basis. *Id.* at 219. The court also rejected the argument that the insured's acts were done with the intention of causing injury or with the expectation that some injury was substantially certain to follow. *Id.* at 223. The court held that the facts permitted the inference that the insured intended no injury to the plaintiff and that summary judgment was inappropriate. *Id.* at 222.

We find that *Poston* is factually distinguishable from the case at bar because, in that case, there was no plan or agreement between the insured and the third party to commit the crime causing injury to the plaintiff. Absent such a plan, it could not be said that the insured's intentional act of "sloshing" gasoline on the plaintiff was, in itself, so substantially certain to result in bodily injury that an intent to injure could be inferred from the nature of the insured's intentional act as a matter of law. In the instant case, by contrast, Moe conspired with Thompson and Green to commit the armed robbery which resulted in the death of Steven Raby. Moe knew that Thompson entered the liquor store with a loaded 12-gauge shotgun and intended to point the gun at the store clerk to successfully carry out the robbery. We conclude that Moe's willing participation in a robbery which, by its very nature, carried a substantial risk of injury or death distinguishes this case from *Poston*.

We conclude that some type of bodily injury is so substantially certain to occur during the commission of an armed robbery that the law will infer an intent to injure on behalf of the insured actor without regard to

his claimed intent. We therefore hold that the circuit court erred in submitting the question of Moe's intent to injure Raby to the jury.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

STEINMETZ, J. (concurring). I disagree with the majority's acceptance of the language in *Poston v. U.S. Fidelity & Guaranty Co.,* 107 Wis. 2d 215, 320 N.W.2d 9 (Ct. App. 1982). (Petition for review denied, 107 Wis. 2d 752.) In that decision, the court of appeals found that the act of throwing gasoline on that plaintiff, in itself, was not substantially certain to result in bodily injury. I cannot agree with the statement as the majority does. The "sloshing" of a human being with such a volatile substance reasonably can be inferred to cause injury either by ignition or by contact itself on the skin, eyes and body.

SHIRLEY S. ABRAHAMSON, J. (dissenting). The majority opinion takes the case away from the jury. I would not. I would affirm the decision of the court of appeals and the circuit court affirming the jury verdict.

This case, like *N.N. v. Moraine Mutual Ins. Co.,* 153 Wis. 2d 84, 450 N.W.2d 445 (1990), involves the interpretation of the intentional injury exclusion in homeowners insurance policies. The number of cases in which courts are called upon to interpret and apply this exclusion is surprisingly large.[1] Obviously the wording of

---

[1]See cases discussed in Annot., *Criminal Conviction as Rendering Conduct for Which Insured Convicted within Provision of Liability Insurance Policy Expressly Excluding Coverage for*

the intentional injury exclusion has caused much litigation, and it is unfortunate that insurers have not revised the language of the exclusion to reduce the number of disputes.

When interpreting the intentional injury exclusion, courts have attempted to balance two public policy objectives: (1) the public and the victim should benefit from the insured's being covered under a homeowners insurance policy, and yet (2) a person should not be allowed to insure against harms he or she intentionally causes, thereby acquiring a license to engage in such activities.

In my opinion, the majority's holdings in this case, and in *N.N. v. Moraine Mutual Ins. Co.,* represent a significant departure from the balance we struck in prior case law interpreting an insurer's liability under the intentional injury exclusion.

The majority opinion claims that it is employing the two-prong subjective test this court adopted in *Pachucki v. Republic Insurance Co.,* 89 Wis. 2d 703, 708, 278 N.W.2d 898 (1979), to determine whether the insured's acts are excluded from coverage as "expected or intended" bodily injury. The court held in that case that the fact finder must determine that the insured intended to act and intended to injure for the insured to be excluded from coverage.

*Damage or Injury Intended or Expected by Insured,* 35 A.L.R.4th 1063 (1985); Annot., *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957 (1984); Annot., *Liability Insurance: Assault as an "Accident," or Injuries Therefrom as "Accidentally" Sustained, within Coverage Clause,* 72 A.L.R.3d 1090 (1976); Annot., *Liability Insurance: Specific Exclusion of Liability for Injury Intentionally Caused by Insured,* 2 A.L.R.3d 1238 (1965).

Under the first prong of the test, the fact finder must determine whether the insured intended the act. The majority opinion in this case, as in *N.N.*, holds that the intent to commit the act is established in the civil action to recover under the insurance policy, as a matter of law, by proof of the insured's guilty plea to and conviction of an intentional crime. The majority opinion concludes that the guilty plea and conviction definitively prove intent to act, regardless of the testimony in either the criminal or civil case that may cast doubt on the subjective intent of the offender. Thus the majority opinion states that "Moe's plea serves as an admission that he intentionally acted to aid and abet the commission of the armed robbery." At 111. See also *N.N.*, 153 Wis. 2d at 84, 90–91, 93–94, 96–97. I conclude that this holding deviates from *Pachucki.* See my dissent in *N.N.*

Under the second prong of the *Pachucki* test, the fact finder must determine whether the insured intended to injure the victim. The majority opinion finds, as a matter of law, that bodily injury is a natural and probable consequence of armed robbery.[2] The majority also

[2]In this case Moe pled guilty to second-degree murder. This plea is an admission that the victim's death was a natural and probable consequence of the commission of the armed robbery. See majority at 106. This plea is not an admission that Moe intended to injure anyone. The jury instructions for felony murder advise the jury that to convict they must find that the act is dangerous to human life but that "it is not required . . . that there be any intent or design to effect death." Wis. J I—Criminal, Instruction 1120, p. 3 (1966). Nevertheless the majority opinion infers as a matter of law that Moe had a subjective intent to injure.

Unfortunately, the majority opinions in both this case and *N.N.* fail to discuss the effect of their holdings on *Crowall v. Heritage Mutual Ins. Co.*, 118 Wis. 2d 120, 346 N.W.2d 327 (Ct. App. 1984), and *Kirchefski v. American Family Mutual Ins. Co.*,

holds that the actor is presumed, as a matter of law, to have intended the natural and probable consequence of the act, that is, the actor is presumed, as a matter of law, to have intended the injury.[3] The majority opinion appears to establish a mandatory presumption of intent to injure in all cases in which the offender is guilty of armed robbery.[4]

Holding that intent to injure has been established as a matter of law in an armed robbery is in marked contrast to the *Pachucki* case. There the fact finder determined intent to injure. The facts giving rise to the injury were undisputed. Despite some testimony to the contrary, each defendant admitted to attempting to hit the

132 Wis. 2d 74, 390 N.W.2d 76 (Ct. App. 1986), two cases dealing with collateral estoppel and with the effect of convictions of crime on a civil action involving insurance policies.

[3]Although the majority opinion refers to the facts of Moe's participation in the armed robbery, as I read the opinion the facts, except for the guilty plea and conviction, are irrelevant to the holding of the case. The majority opinion concludes "that some type of bodily injury is so substantially certain to occur during the commission of an armed robbery that the law will infer an intent to injure on behalf of the insured actor without regard to his claimed intent." At 114-115. The majority opinion makes this inference regardless of whether the insured is the actor, aider or abettor, or conspirator in the armed robbery.

[4]A mandatory presumption is a rule of substantive law, and, as LaFave and Scott point out, a mandatory presumption "would in effect destroy the concept of intention and replace it entirely with negligence. This is because the defendant would be held to have intended whatever a reasonable man would have foreseen as probable." LaFave and Scott, *Criminal Law* sec. 28, p. 203 (1972).

Thus the majority opinion adopts a negligence standard in interpreting and applying the intentional injury exclusion in the policy, even though the majority opinion interprets the policy as excluding only intentionally inflicted harms.

118

victim with a greening pin and cause stinging. The defendants denied they intended to inflict the serious eye injury that resulted. This court affirmed the circuit court's factual finding of intent to injure from this record as not contrary to the great weight and clear preponderance of the evidence.

In this case, in response to a special verdict question, the jury responded that Terrence Moe did not expect or intend to injure Steven Raby. The jury specifically found that it was Moe's negligence in participating in the armed robbery that was a cause of injury to Raby. The court of appeals concluded that evidence presented at trial was sufficient to support the jury's verdict that Moe's negligence caused the injury. See *Raby v. Moe,* 149 Wis. 2d 370, 381, 441 N.W.2d 263 (Ct. App. 1989). Nevertheless the majority opinion overturns the jury's verdict, concluding that, as a matter of law, Moe intended to injure Raby. The majority opinion rests simply on the newly constructed mandatory presumption that intent to injure will be inferred from armed robbery.

In summary I conclude that the majority opinion adopts an objective test, retreating from *Pachucki*'s subjective intent to injure test.[5] I believe that the test originally set forth in *Pachucki* remains the better means of

[5]The majority opinion appears to be mixing intent to inflict injury (a subjective test—the actor desires to cause the consequences of his act, knows the consequences are certain, or knows the consequences are substantially certain), with reckless infliction of injury (an objective test—the actor has intentionally done an act of an unreasonable character in disregard for a known or obvious risk highly probable to follow with conscious indifference for the consequences) and negligent infliction of injury (an objective test—the actor fails to do what a reasonable person would do under the same or similar circumstances). The difference among the three is probability of harm. See Restatement (Second) of

evaluating whether coverage for intentional injury in a particular case should be excluded under homeowners insurance policies. An injury can be unintentional even though the acts that caused the injury were intentional. If the actor who does an intentional act does not intend injury, the actor is covered by the policy. Only intended injuries flowing from an intentional act are excluded under an intentional acts provision in a homeowners policy.

Because I believe that the court should follow the rationale of *Pachucki,* I dissent.

Torts sec. 8A, p. 15 (1965); Prosser and Keeton, *Torts* 33–36 (5th ed. 1984).

Prosser and Keeton (pp. 169–170) discuss the difference as follows:

> It is helpful to an understanding of the negligence concept to distinguish it from intent. In negligence the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain or occur, or believe they will. There is merely a risk of such consequences, sufficiently great to lead a reasonable person in his position to anticipate them, and to guard against them . . . .. As the probability of injury to another, apparent from the facts within the acting party's knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it approaches and finally becomes indistinguishable from that substantial certainty of harm that underlies intent.

The *Pachucki* case and *K.A.G. v. Stanford,* 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), carefully distinguish among the three kinds of consequences of intentional acts. I think the holding in this case fails to make the distinction.