Richard SCHWERSENSKA, Plaintiff-Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Travis J. Menge, and Michael Neitzke, Defendants-Respondents.

Court of Appeals

*No. 95–3620. Submitted on briefs October 11, 1996.—Decided November 21, 1996.*

(Also reported in 557 N.W.2d 469.)

For the plaintiff-appellant the cause was submitted on the briefs of *Gordon S. Johnson, Jr.* of Berlin.

For the defendant-respondent the cause was submitted on the brief of *Russell W. Wilson* and *Matthew E. Yde* of *Ruder, Ware & Michler, S.C.,* of Wausau.

Before Dykman, P.J., Vergeront and Deininger, JJ.

DYKMAN, P.J. On March 6, 1994, Travis Menge, while a passenger in Michael Neitzke's car, shot Richard Schwersenska in the left arm. Schwersenska was driving a pickup truck following Neitzke's car. Schwersenska filed suit against Menge, Neitzke and American Family Mutual Insurance Company, which had issued a homeowners policy to Neitzke's parents. The policy covered Neitzke. American Family moved for summary judgment, arguing that its homeowners policy specifically excluded coverage for the claims alleged against Neitzke. The trial court granted Ameri-

can Family's motion because the policy excluded coverage for bodily injury or property damage "which is expected or intended by any insured." Schwersenska appeals, arguing that summary judgment is not appropriate because a jury, not the court, should determine whether Neitzke intended to cause bodily injury. We conclude that Neitzke's intent to injure can be inferred from his conduct as a matter of law. We therefore affirm.[1]

## BACKGROUND

On Friday, March 4, 1994, Neitzke, then twenty-two years old, was struck on the side of the face with a snowball at the car wash in Berlin, Wisconsin. Neitzke confronted the individual who threw the snowball and grabbed him by the shirt. Menge, who was also twenty-two years old and had been friends with Neitzke for about ten years, pushed the person away, and Neitzke and Menge left.

On Saturday, March 5, Neitzke and Menge drove into Berlin at around 6:30 or 7:00 p.m. in Neitzke's car. They took a quarter barrel of beer with them and planned to pick up some people and return to Menge's house to have a party. While meeting with some people that Menge knew at the car wash, Neitzke and Menge

---

[1] In its motion for summary judgment, American Family also argued that Neitzke's actions were excluded from coverage because its homeowners policy specifically excluded coverage for bodily injury or property damage "arising out of the operation [or] use . . . of . . . any type of motor vehicle." Because we conclude that Neitzke's acts fell under the intentional acts exclusion of the homeowners policy, we do not reach the issue of whether Neitzke's acts fell under the motor vehicle exclusion. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

were confronted about the prior evening by a person who alleged that they struck the person who threw the snowball. Neitzke and Menge moved across the parking lot, and their accuser left.

Neitzke and Menge drove to Hardees. A car pulled into the parking lot and Menge, apparently recognizing the people in the car, told Neitzke that they should leave. They did, and as they drove past the car wash, people started yelling and throwing plastic soda bottles and snowballs at them. A vehicle pulled out and followed their car. After driving about three miles, Neitzke lost the pursuing vehicle.

Neitzke and Menge drove into town a second time. They again drove past the car wash, and again people yelled and threw things at them. This time, two vehicles chased Neitzke's car, but Neitzke outraced them.

At around 11:00 p.m., Neitzke and Menge returned to Menge's house, which was five or six miles away, so that Menge could get his semi-automatic deer rifle. Menge told Neitzke that he wanted to use the rifle to scare their adversaries. Menge took the rifle and about fifteen to twenty rounds of ammunition from his house, and they again departed.

Neitzke and Menge returned to Berlin to confront the people at the car wash and find out why they were upset with them. On the ride back, Menge loaded the rifle's magazine with ammunition. They reached town about midnight, and the people at the car wash again started yelling and throwing things. One person chased them with a tire iron, and four cars followed.

As Neitzke drove out of town, he noticed a pursuing vehicle seventy-five yards away. Neitzke gained some distance from the closest vehicle, but could still see its headlights through the fog. Menge loaded the magazine into the rifle, sat on the passenger-side door

with his body outside the car, and fired four shots in quick succession at the pursuing vehicle, striking its driver, Richard Schwersenska, in the arm.

Schwersenska brought suit against Menge, Neitzke, and American Family Mutual Insurance Company, which provided liability insurance coverage for Neitzke pursuant to a homeowners policy issued to Neitzke's father. American Family moved for summary judgment, arguing that its homeowners policy specifically excluded coverage for the claims alleged against Neitzke because the policy in question excluded coverage for bodily injury or property damage "which is expected or intended by any insured." The trial court granted American Family's motion, and Schwersenska appeals.

## DISCUSSION

█

Schwersenska argues that the trial court erred by granting summary judgment because an issue of material fact existed as to whether Neitzke's act was intentional so as to fall under the exemption of the homeowner's insurance policy. Summary judgment may be utilized to address insurance policy coverage issues. *Raby v. Moe*, 153 Wis. 2d 101, 109, 450 N.W.2d 452, 454 (1990). We have described summary judgment methodology many times. *See State Bank v. Elsen*, 128 Wis. 2d 508, 511-12, 383 N.W.2d 916, 917-18 (Ct. App. 1986). We need not repeat it here.

In *Loveridge v. Chartier*, 161 Wis. 2d 150, 168, 468 N.W.2d 146, 150 (1991), the court summarized how Wisconsin courts construe intentional acts exclusions in insurance policies:

In Wisconsin, an intentional-acts exclusion precludes insurance coverage only where the insured acts intentionally and intends some harm or injury to follow from the act. An insured intends to injure or harm another if he "intend[s] the consequences of his act, or believe[s] that they are substantially certain to follow." In other words, intent may be actual (a subjective standard) or inferred by the nature of the insured's intentional act (an objective standard). Therefore, an intentional-acts exclusion precludes insurance coverage where an intentional act is substantially certain to produce injury even if the insured asserts, honestly or dishonestly, that he did not intend any harm.

(Citations omitted.)

In his deposition, Neitzke testified that at no time did he expect that Menge was going to shoot the gun. Because no evidence has been offered to establish that Neitzke actually intended to cause harm or injury, his intent cannot be established under a subjective standard. Therefore, we must determine whether Neitzke's intent can be established under an objective standard as a matter of law.

Ordinarily, the question of whether an insured intended harm or injury to result from an intentional act is a question of fact. *Raby*, 153 Wis. 2d at 112, 450 N.W.2d at 456. However, we may infer that an insured intended to injure or harm as a matter of law "if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law." *K.A.G. v. Stanford*, 148 Wis. 2d 158, 163, 434 N.W.2d 790, 792 (Ct. App. 1988). When determining whether intent can be inferred as a matter of law, each set of facts "must be considered on a case-by-case basis; the more likely harm is to result from cer-

tain intentional conduct, the more likely intent to harm may be inferred as a matter of law." *Id.* at 165, 434 N.W.2d at 793.

In *Raby v. Moe*, 153 Wis. 2d 101, 450 N.W.2d 452 (1990), the court faced a situation similar to the one we face here. Jeff Thompson asked Terrance Moe to assist him in robbing a liquor store, and Moe agreed to drive the getaway car. *Id.* at 105-06, 450 N.W.2d at 453. Moe drove Thompson to the liquor store and waited in the car while Thompson entered the store with a loaded shotgun, took money from the cash register, and shot and killed Steven Raby, the store clerk. *Id.* at 106, 450 N.W.2d at 453. Moe pleaded guilty to second-degree murder, party to a crime, under §§ 940.02(2) and 939.05, STATS., 1985-86. *Id.*

Raby's parents commenced a civil action against Moe and Heritage Mutual Insurance Company, which provided Moe's homeowners insurance. *Id.* at 104, 450 N.W.2d at 453. Heritage moved for summary judgment, arguing that its policy did not cover damages resulting from Raby's death because the policy excluded coverage for injury "expected or intended" by the insured. *Id.*

The supreme court stated that the rule which permits a court to infer an intent to injure in limited circumstances "is applicable whenever the criminal conduct of the insured is of such a dangerous character as to impose a substantial threat to the well-being and safety of innocent victims caught in the midst of that criminal conduct." *Id.* at 113, 450 N.W.2d at 456. The court concluded:

> In the instant case, Thompson [and] Moe . . . conspired to commit an armed robbery and agreed that that robbery would be carried out with a loaded 12-

gauge shotgun. On these facts, we do not think that it can reasonably be said that the death of Steven Raby occurred merely by accident. Moe must be held to know the substantial risk of injury inherent in his criminal wrongdoing and cannot expect his homeowners insurer to provide coverage for damages resulting from that wrongdoing simply by saying, after the fact, that he did not intend for any harm to result.

*Id.*

Likewise, Neitzke and Menge conspired to scare their adversaries at the car wash with a semi-automatic deer rifle. Neitzke saw Menge take the shells and gun from his house. Neitzke saw Menge load the shells into the magazine. Neitzke heard the bolt go forward, chambering a round. And Neitzke saw Menge climb out of the car and position himself so that he could look back toward the pursuing car.[2] Yet Neitzke did nothing to stop Menge from firing four rounds at the following vehicle. Like Moe, Neitzke must be held to know the substantial risk of injury inherent in taking Menge to confront a seemingly angry mob with a semi-automatic deer rifle and fifteen to twenty rounds of ammunition. We infer that Neitzke intended to cause Schwersenska's injuries as a matter of law.

---

[2] At least in this facet of the case, Neitzke's intent to injure Schwersenska is more conclusively established than Moe's intent to injure the store clerk. Moe waited in the car while Thompson murdered the liquor store clerk, and therefore was in no position to stop Thompson's actions. Neitzke, on the other hand, was with Menge at the time of the shooting. Neitzke could have told Menge to stay in the car and refrain from firing the gun. Or Neitzke at least could have swerved the car to hinder Menge's ability to aim. Neitzke's decision to do nothing to prevent the shooting evinces an intent to cause injury.

Schwersenska argues that this case is distinguishable from *Raby* because Menge abandoned the plan to use the rifle to scare the people at the car wash, while Thompson and Moe never abandoned their plan of armed robbery. The facts set forth in the court of appeals opinion of *Raby v. Moe*, 149 Wis. 2d 370, 381, 441 N.W.2d 263, 266 (Ct. App. 1989), *rev'd*, 153 Wis. 2d 101, 450 N.W.2d 452 (1990), however, indicate that Moe's plan also was not followed:

> Moe testified that, while he thought Thompson might use the gun to attempt to scare the store clerk, it was not "any part of the plan for the armed robbery that anybody should shoot [Raby]." According to Moe, when he and the others planned the robbery, no one expressed any intention to shoot the clerk, and he stated unequivocally that he neither intended nor expected that any shooting would occur, or that the clerk would suffer any harm.

What is important, then, is not whether the original plan was continued, but whether "the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law." *K.A.G.*, 148 Wis. 2d at 163, 434 N.W.2d at 792.

Schwersenska argues that this case is analogous to *Poston v. U.S. Fidelity & Guaranty Co.*, 107 Wis. 2d 215, 320 N.W.2d 9 (Ct. App. 1982), in which the court did not infer an intent to injure. In *Poston*, the plaintiff was injured when Thomas Coyne "sloshed" gasoline on her and an onlooker ignited it. *Id.* at 217, 320 N.W.2d at 10. Poston brought suit against Coyne and his insurer. Because Coyne's liability policy excluded coverage for intentional acts, his insurer moved for summary judgment, which the circuit court granted. *Id.* at 217, 320 N.W.2d at 10. The court of appeals

reversed, rejecting the insurer's argument that "Coyne's acts were done with the intention of causing injury or with the expectation that some injury was substantially certain to follow." *Id.* at 223, 320 N.W.2d at 13.

The *Raby* court summarized *Poston* as follows:

> [I]n that case, there was no plan or agreement between the insured and the third party to commit the crime causing injury to the plaintiff. Absent such a plan, it could not be said that the insured's intentional act of "sloshing" gasoline on the plaintiff was, in itself, so substantially certain to result in bodily injury that an intent to injure could be inferred from the nature of the insured's intentional act as a matter of law.

153 Wis. 2d at 114, 450 N.W.2d at 457. Because there was no plan or agreement between Neitzke and Menge to commit the crime causing injury, Schwersenska argues, this case is analogous to *Poston* and Neitzke's intent to injure cannot be inferred as a matter of law.

Schwersenska misconstrues the *Raby* court's reading of *Poston*. Absent a plan or agreement, Coyne had no reason to expect that a third person would light Poston on fire after he sloshed gasoline on her. Therefore, under the facts of *Poston*, a plan or agreement was needed in order for Coyne to be substantially certain that his actions would result in bodily injury. Neitzke, on the other hand, did not need to be carrying out a plan with Menge to be substantially certain that Menge's actions would result in bodily injury. Neitzke directly observed Menge's actions in taking a rifle and ammunition to confront an angry mob, loading the

rifle, and climbing outside the car with the rifle and facing a pursuing car. *Poston* is thus distinguishable.[3]

Schwersenska also argues that this case is distinguishable from *Raby* because the confrontation at the car wash is inherently different from armed robbery. Schwersenska argues that harm is more likely to result from armed robbery than confrontations at a car wash, and therefore it is more likely that intent to harm may be inferred from armed robbery as a matter of law. *See K.A.G.*, 148 Wis. 2d at 165, 434 N.W.2d at 793. Schwersenska may be correct in concluding that armed robbery is more likely to result in injury than the confrontation at the car wash. Regardless, because we have concluded that the degree of certainty that Neitzke's actions would cause injury is sufficiently great to justify inferring his intent to injure as a matter of law, the question of which conduct was more certain to result in harm is irrelevant.

Finally, Schwersenska argues that Neitzke's intent to injure cannot be inferred as a matter of law because Neitzke did not plead guilty to criminal charges.[4] In both *Raby* and *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis. 2d 84, 450 N.W.2d 445 (1990), the court considered the insured's plea of guilty in inferring an intent to injure. Schwersenska argues that the exception to the rule that intent to injure is a question of fact

---

[3] The result in *Poston* might well have been different had Coyne observed the third person standing near Poston with a lighted match prior to the gasoline "sloshing." In *Raby v. Moe*, 153 Wis. 2d 101, 450 N.W.2d 452 (1990), in addition to the conspiracy to commit armed robbery, the supreme court noted that "Moe *knew* that Thompson entered the liquor store with a loaded 12-gauge shotgun and intended to point the gun at the store clerk." *Id.* at 114, 450 N.W.2d at 457 (emphasis added).

[4] Neitzke pleaded no contest to first-degree reckless injury.

should be limited to cases in which the insured has pleaded guilty to criminal charges. We disagree.

In *Raby*, the court did not conclude that Moe's guilty plea was necessary to establish intent. The court first stated that "Moe's testimony at the criminal trial of Jeff Thompson *indisputably established* that Moe willingly and actively assisted Thompson in the commission of the armed robbery by driving the getaway car." *Raby*, 153 Wis. 2d at 110, 450 N.W.2d at 455 (emphasis added). Only after providing that Moe's intent was indisputably established did the court state that Moe's voluntary plea of guilty "further established" his intent to act. *Id.* Therefore, *Raby* did not conclude that an admission of guilt is necessary to establish intent.

In *N.N.*, the court concluded that the defendant's guilty plea was the "determinative fact" in the case. 153 Wis. 2d at 91, 450 N.W.2d at 448. The court did not, however, maintain that an intent to injure cannot be inferred absent a guilty plea. In fact, it appears that the court focused on the guilty plea because the guilty plea was the focus of the insurance companies' motion for summary judgment: "Defendant insurance companies made their prima facie case for summary judgment based first upon the guilty plea of the defendant and additionally upon the fact that sexual assault is by its very nature an intentional act." *Id.* And the court did not focus solely on the guilty plea in establishing intent: "We conclude on the basis of the guilty plea *and* consistent evidence of intentional acts supporting the acceptance of the plea that the intentional nature of Metz's behavior has been demonstrated." *Id.* at 96, 450 N.W.2d at 450 (emphasis added).

*K.A.G. v. Stanford*, 148 Wis. 2d 158, 434 N.W.2d 790 (Ct. App. 1988), was the first Wisconsin opinion to

conclude that intent "may be inferred as a matter of law without regard to the actor's claimed intent." *Id.* at 163, 434 N.W.2d at 792. In setting forth the applicability of this rule, the court did not provide that a guilty plea is a predicate to inferring intent as a matter of law. Instead, the court provided that for the rule to apply:

> [T]wo requirements must be met. First, the conduct must be intentional. Second, the conduct must be substantially certain to cause injury. If these conditions are met, the rule will only be applied if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law.

*Id.* We have already established that Neitzke's conduct satisfied these requirements.

In addition, the *K.A.G.* court noted that the rule "is not susceptible to a bright-line test and must be considered on a case-by-case basis." *Id.* at 165, 434 N.W.2d at 793. If we were to follow Neitzke's argument that intent to injure cannot be inferred absent the insured's plea of guilty to criminal charges, we would establish a bright-line test for determining whether to infer intent to injure. Because the rule is not susceptible to a bright-line test and must be considered on a case-by-case basis, we reject Neitzke's argument.

*By the Court.*—Order affirmed.