Robert A. BRUNER, Sr., d/b/a R.A. Bruner Company, Plaintiff-Appellant,†

v.

HERITAGE COMPANIES, Defendant-Respondent.

Robert A. BRUNER, Sr., d/b/a R.A. Bruner Company, Plaintiff-Appellant,†

v.

WEST BEND MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 97–3383. Oral argument November 12, 1998.—Decided March 17, 1999.*

(Also reported in 593 N.W.2d 814.)

†Petition to review denied.

728

730

On behalf of the plaintiff-appellant, there were briefs by *Gerardo H. Gonzalez* and *Monesia L. Taylor* of *Gonzalez, Saggio, Birdsall & Harlan, S.C.* of Milwaukee. There were oral arguments by *Gerardo H. Gonzalez.*.

On behalf of the defendant-respondent Heritage Companies, there was a brief by *Arthur P. Simpson* of *Simpson & Deardorff* of Milwaukee. On behalf of the defendant-respondent West Bend Mutual Insurance Company, there was a brief by *Jeffrey Leavell* and *Michael R. Vescio* of *Jeffrey Leavell, S.C.* of Racine. There were oral arguments by *Jeffrey Leavell.*

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J. Robert A. Bruner, Sr. (R.A. Bruner), d/b/a R.A. Bruner Company, appeals from summary judgments in favor of Heritage Companies and West Bend Mutual Insurance Company (the Insurers) holding that the Insurers had no duty to defend or provide comprehensive general liability (CGL) coverage to him in an action for conspiracy to convert property. We conclude that a claim of conspiracy to convert does not constitute an "occurrence" and is excluded by the "intentional acts" language in the CGL policies (the policies). We also determine that the Insurers had no duty to indemnify R.A. Bruner for his conversion of property stolen from Bruner Corporation (Bruner). Separately, we decide that no coverage lies for an "advertising injury" under the policies. Because the Insurers had no duty of defense and no duty to indemnify, we affirm the summary judgments.

## BACKGROUND

The facts are undisputed. Bruner designs, manufactures and sells water treatment systems and related equipment. R.A. Bruner competes with Bruner in the selling of water treatment systems and components.[1] Bruner sued R.A. Bruner in the United States District Court for the Eastern District of Wisconsin seeking damages for water treatment property stolen from it and then purchased and resold by R.A. Bruner.[2] Bruner's federal complaint against R.A. Bruner alleged: (1) a violation of the Racketeer-Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. §§ 1961–1968; (2) a violation of the Wisconsin Organ-

---

[1] R.A. Bruner and Bruner Corporation are separate and unrelated business entities.

[2] See Bruner Corp. v. Balogh, No. 93-C–0080, unpublished slip op. (E.D. Wis. Nov. 22, 1995).

ized Crime Control Act (WOCCA) under § 946.83(3), STATS.; (3) conspiracy to convert; and (4) conspiracy to cause trade and business injury in violation of § 134.01, STATS.

R.A. Bruner tendered the defense of the federal action to the Insurers, who denied coverage and refused to defend. Ultimately, the federal court granted R.A. Bruner's summary judgment motions to dismiss all counts except conversion because R.A. Bruner had no knowledge that the Bruner products were stolen. However, concluding that in a conversion action it is only necessary to find that the holder is in unlawful possession of property and that the rightful owner is not required to make a demand for the return of the property, *see Eldred v. Oconto Co.*, 33 Wis. 133, 140 (1873), the federal court granted summary judgment to Bruner for the list price of the goods converted by R.A. Bruner in the amount of $220,498.70.

R.A. Bruner subsequently brought this action in Ozaukee county circuit court against the Insurers, alleging breach of contract to defend, breach of contract to provide coverage and bad faith. He contended that the Insurers were obligated to investigate and seek bifurcation of the pending Bruner action in order to obtain a judicial determination of their duty under the insurance contracts. The Insurers moved for summary judgment dismissal of R.A. Bruner's coverage complaint and allegation of bad faith. The trial court granted summary judgment dismissal and R.A. Bruner appeals.

■

In reviewing summary judgments, we apply the methodology set forth in § 802.08(2), STATS., in the same manner as the trial court. We owe the trial court no deference and conduct our review de novo. *See*

733

*Schapiro v. Security Sav. & Loan Ass'n*, 149 Wis. 2d 176, 181, 441 N.W.2d 241, 244 (Ct. App. 1989). That methodology has been often repeated, *see Preloznik v. City of Madison*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983), and we do not, therefore, recite it here. Nonetheless, we note that summary judgment should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Schapiro*, 149 Wis. 2d at 181, 441 N.W.2d at 244. In addition, the interpretation of an insurance policy is a question of contract law that we review independently of the trial court's determination. *See Greene v. General Cas. Co.*, 216 Wis. 2d 152, 157, 576 N.W.2d 56, 59 (Ct. App. 1997), *review denied*, 216 Wis. 2d 612, 579 N.W.2d 44 (1998).

R.A. Bruner contends that summary judgment dismissal of his claims was contrary to Wisconsin law requiring that courts view coverage from the standpoint of the insured. *See Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 742, 351 N.W.2d 156, 166–67 (1984). He reasons that because there was no intent to convert the property and because he did not intend the results (property damage to Bruner) of his unknowing conversion, the conversion was an "accident" which should be covered by the policies. He supports his contention by arguing that because the federal court determined that he did not "intend to convert" the Bruner property, he was therefore covered under the policies.

The Insurers reply that the policies do not provide coverage for intentional acts and that Bruner's federal complaint alleges that R.A. Bruner's acts were intentional and not "accidents" or "occurrences" covered under the policies. The Insurers also read Bruner's complaint as seeking damages from R.A. Bruner that

are excludable under the policies as expected or intended damages from the standpoint of the insured.

## DISCUSSION

### A. Duty to Defend

■

We first address whether the Insurers had a duty to provide a defense to R.A. Bruner. The duty to defend is broader than the separate duty to indemnify because the duty to defend is triggered by arguable, as opposed to actual, coverage. *See Newhouse v. Citizens Sec. Mut. Ins. Co.*, 176 Wis. 2d 824, 834–35, 501 N.W.2d 1, 5 (1993). Whether an insurer has a duty to defend is determined by the complaint and not by extrinsic evidence. *See Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992). If there are allegations in the complaint which, if proven, would be covered, the insurer has a duty to defend. *See id.* An insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established. *See Elliott v. Donahue*, 169 Wis. 2d 310, 317, 485 N.W.2d 403, 406 (1992).

Bruner's federal complaint alleged that R.A. Bruner "conspired to convert and did convert Bruner products by intentionally taking and/or controlling such Bruner products without the consent of Bruner and without lawful authority, which taking and/or controlling seriously interfered with the right of Bruner to possess such goods." Bruner claimed that R.A. Bruner was liable "for the value of Bruner products converted from Bruner in the course of the alleged conspiracy."

We read these allegations as stating a claim for conspiracy to convert.[3]

A civil claim of conspiracy to convert includes the elements of both civil conspiracy and civil conversion. Civil conspiracy requires: "(1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 448, 557 N.W.2d 835, 840 (Ct. App. 1996). Additionally, to form a conspiracy there must be an "agreement to violate or disregard the law," and the persons involved must "knowingly [be] members of the conspiracy." WIS J I—CIVIL 2800; *see Augustine v. Anti-Defamation League of B'nai B'rith*, 75 Wis. 2d 207, 216, 249 N.W.2d 547, 552 (1977) (an agreement toward the attainment of an illegal objective is a necessary element of a civil conspiracy). In short, a civil conspiracy entails two or more persons knowingly committing wrongful acts.

The elements of tortious conversion comprise: (1) intentionally controlling/taking property belonging to another; (2) controlling/taking property without the owner's consent; and (3) those acts resulting in serious interference with the rights of the owner to possess the property. *See* WIS JI—CIVIL 2200. By itself, conversion does not include wrongful intent or knowledge that

---

[3] The Insurers contend that conversion, standing by itself, is an intentional act even if the person converting the property did not know that it was taken without the consent of the owner. The Insurers contend that this is so because conversion is considered an "intentional tort" in the law. Because the claim in Bruner's complaint alleged a *conspiracy* to convert, rather than simply a conversion, we do not address the Insurers' contention.

736

what is being taken rightfully belongs to another. *See Eden Stone Co. v. Oakfield Stone Co.*, 166 Wis. 2d 105, 124, 479 N.W.2d 557, 565 (Ct. App. 1991). However, when coupled with civil conspiracy, Bruner's allegation of conspiracy to convert adds an intentional or knowledge component. Therefore, conspiracy to convert involves an agreement between two or more persons to intentionally or knowingly convert property belonging to another. To read "conspiracy to convert" without an element of intent would be to ignore the allegation of conspiracy altogether.

Next, we must determine whether the policies at issue provide coverage for Bruner's allegation of conspiracy to convert. The policies insure against property damage arising from an "occurrence," which is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."[4] The policies state that the Insurers will "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Property damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Coverage is excluded for " 'property damage' expected or intended from the standpoint of the insured."

Although not defined in the policies, the term "accident" has a common meaning within the context of CGL policies of " 'an unexpected, undesirable event' or 'an unforeseen incident' which is characterized by a

---

[4] West Bend's and Heritage's policies contain essentially the same language. For the sake of simplicity, we only cite language from West Bend's policy.

'lack of intention.' " *Doyle v. Engelke*, 219 Wis. 2d 277, 289, 580 N.W.2d 245, 250 (1998) (quoted source omitted). An "accident" also refers to an "event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." *Kalchthaler v. Keller Constr. Co.*, 224 Wis. 2d 387, 397, 591 N.W.2d 169, 173 (Ct. App. 1999).

Because we have determined that conspiracy to convert necessarily involves the knowing or intentional conversion of property, we conclude that an allegation of conspiracy to convert, by definition, cannot be considered an "accident." Conspiracy to convert contemplates an agreement to commit wrongful acts and the consequences of such acts cannot be regarded as unforeseen or accidental.

The policies' "intentional acts" exclusion also supports our conclusion that conspiracy to convert is not covered under the policies. The "intentional acts" exclusion precludes coverage if the following elements are shown: (1) the allegations plead an intentional act; and (2) the insured intended or expected some injury or harm to follow from that act. *See Raby v. Moe*, 153 Wis. 2d 101, 110, 450 N.W.2d 452, 455 (1990); *Pachucki v. Republic Ins. Co.*, 89 Wis. 2d 703, 710, 278 N.W.2d 898, 902 (1979). Under the first element, the complaint alleged that R.A. Bruner "conspired to convert and did convert Bruner products by intentionally taking and/or controlling . . . Bruner products." The allegation of "intentional taking and/or controlling" constitutes an intentional act.

The second element is not as apparent because Bruner's conspiracy to convert claim does not explicitly state that R.A. Bruner intentionally harmed Bruner.

738

However, we have recently held that in a case involving allegations of fraud, conspiracy to commit fraud and mail fraud under RICO, intent to harm or injure can be inferred as a matter of law. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 498–99, 588 N.W.2d 285, 295 (Ct. App. 1998), *review denied*, 224 Wis. 2d 263, 590 N.W.2d 489 (1999). We believe the same conclusion can be made for an allegation of conspiracy to convert.

The question of intent to harm is ordinarily an issue of fact for a jury; however, we have recognized circumstances that permit courts to infer such intent. *See id.* at 498, 588 N.W.2d at 295. Intent to harm may be inferred if "the conduct alleged is of such a nature that injury or harm is substantially certain to result." *Id.* at 499, 588 N.W.2d at 295. We may also infer intent " 'where a reasonable [person] in the defendant's position would believe that a particular result was substantially certain to follow.' " *Id.* (quoting *K.A.G. v. Stanford*, 148 Wis. 2d 158, 162–63, 434 N.W.2d 790, 792 (Ct. App. 1988) (intent to harm was inferred from allegations of sexual assault of a child)). Furthermore, a person is "presumed to intend 'the natural and probable consequences of his [or her] acts voluntarily and knowingly performed.' " *Id.* (quoting *Haessly v. Germantown Mut. Ins. Co.*, 213 Wis. 2d 108, 118, 569 N.W.2d 804, 808 (Ct. App.), *review denied*, 215 Wis. 2d 425, 576 N.W.2d 281 (1997)).

We are persuaded that the allegations in Bruner's complaint imply intent to harm by R.A. Bruner. The complaint alleges that R.A. Bruner conspired to convert Bruner's property, and we have already determined that such an allegation contemplates wrongful acts knowingly committed by two or more

persons acting in concert. Because a knowing conversion necessarily involves the wrongful taking of another's property with knowledge that the property rightfully belongs to another, intent to harm is implied. Whether R.A. Bruner intended specific harm to Bruner is irrelevant; a person need only intend some harm to follow or harm must be substantially certain to occur. *See Pachucki*, 89 Wis. 2d at 710, 278 N.W.2d at 902.

We are also satisfied that a reasonable person in R.A. Bruner's position would believe that some harm would arise or was substantially certain to arise from a conspiracy to convert. *See A.O. Smith*, 222 Wis. 2d at 500, 588 N.W.2d at 296. The complaint claimed that Roger Balogh and John Balogh sold stolen Bruner products to R.A. Bruner at prices substantially below prices offered by Bruner. The purchases were allegedly made on at least sixty-nine occasions between 1990 and 1993 and totaled over $100,000. The complaint also asserted that R.A. Bruner conspired to convert property with John Balogh and the other defendants. Because conversion necessitates the wrongful acquiring of another's property and because conspiracy entails knowledge by the co-conspirators that wrongful acts have been committed, we are convinced that a reasonable person would believe that harm was certain or substantially certain to follow. As a result, we conclude that coverage for an allegation of conspiracy to convert is precluded by the "intentional acts" exclusion. Thus, since no coverage is afforded for Bruner's allegations, the Insurers had no duty to defend R.A. Bruner.[5]

---

[5] R.A. Bruner does not contend that Bruner's other federal claims triggered a duty to defend.

## B. Duty to Indemnify

Although we have concluded that an allegation of conspiracy to convert does not trigger coverage under the policies, we nonetheless address the Insurers' duty to indemnify because the federal court determined that R.A. Bruner was liable for conversion, standing by itself. R.A. Bruner contends that because the federal court "determined that [he] did not intend to convert and that no reasonable jury could determine that he did intend the results of his unknowing conversion," there is coverage. We cannot agree.

In its decision, the federal court first addressed Bruner's statutory claims. The court found that "[n]o reasonable jury could find that . . . R.A. Bruner 'intended to cause harm [to Bruner] for harm's sake,' as required for a violation of § 134.01[, STATS.]." In addressing civil conversion, the court properly determined that Wisconsin law does not require a knowledge or intentional harm component. The court also established that conversion does not require a demand and refusal. However, the court found that in this case a demand and refusal did in fact occur: "R.A. Bruner . . . repeatedly refused to comply with Bruner's demands for payment for the stolen goods."

We are persuaded that coverage should not be extended to R.A. Bruner in this instance. After R.A. Bruner purchased the stolen Bruner products, he resold the goods. Subsequently, Bruner demanded that R.A. Bruner return the stolen goods or repay their value. As the federal court found, R.A. Bruner refused Bruner's requests. Therefore, R.A. Bruner was ultimately given notice that the goods he had purchased were stolen and rightfully belonged to Bruner.

R.A. Bruner's refusal to repay the value of the stolen goods precludes him from coverage because his

actions constitute intentional acts excluded under the policy. As we previously set forth, the first requirement for the "intentional acts" exclusion is an intentional action. *See Raby,* 153 Wis. 2d at 110, 450 N.W.2d at 455. Here, R.A. Bruner intentionally took property, intentionally sold the property and intentionally refused Bruner's requests for return or repayment. We are satisfied that R.A. Bruner's actions were intentional.

Second, we must consider whether the insured intended or expected some injury or harm to follow from his or her actions. *See id.* R.A. Bruner asserts, and we agree, that when he wrongfully acquired Bruner's property, he did not know that the property rightfully belonged to Bruner. We also acknowledge that R.A. Bruner did not have knowledge of the conversion at the time he sold Bruner's property. However, because R.A. Bruner refused Bruner's demand for the return or repayment of its stolen property, we are convinced that R.A. Bruner's actions establish an intent to harm.

As discussed earlier, intent to harm may be inferred where a reasonable person in the defendant's position would believe that a particular result was substantially certain to follow. *See A.O. Smith,* 222 Wis. 2d at 500, 588 N.W.2d at 296. Here, a reasonable person would have believed that by refusing to repay Bruner the value of its converted property, Bruner would suffer damages. Moreover, the natural and probable consequences of R.A. Bruner's refusal to repay Bruner was that Bruner would lose the value of its stolen goods. Thus, we are satisfied that an intent to harm can be inferred and we conclude that coverage is precluded by the "intentional acts" exclusion.

To decide otherwise would hold the Insurers responsible for the value of stolen property acquired by

its insured and subsequently sold to third parties even though the insured was ultimately informed that the property was stolen and rightfully belonged to another. We do not believe that this was a risk bargained for or contemplated by the parties. Consequently, we are not willing to place this risk upon the Insurers.

## C. Advertising Injury

Lastly, R.A. Bruner argues that Bruner's federal complaint states a claim that falls within the meaning of the term "advertising injury" under the policies. R.A. Bruner states that Bruner complained that he "competed with [Bruner] and as such, Bruner . . . suffered damage to its reputation, lost goodwill, and ultimately suffered because of customer confusion regarding the product source." R.A. Bruner contends that these damages constitute an "advertising injury." We disagree.

The policies define "advertising injury" as "an offense committed in the course of advertising [the insured's] goods, products or services." These offenses include:

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

R.A. Bruner suggests that the complaint implicates one or both of these offenses. Our review of the complaint, however, indicates otherwise.

Bruner's statutory claims involved violations of RICO and WOCCA and conspiracy under § 134.01, STATS.[6] Specifically, Bruner's RICO claim alleged a

---

[6] Section 134.01, STATS., provides:

**Injury to business; restraint of will.** Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert

"pattern of racketeering" by R.A. Bruner and others, and a conspiracy to devise "a scheme or artifice to defraud Bruner" through conversion. The WOCCA claim contained similar allegations. The allegation of conspiracy under § 134.01 involved a claim of "wilfully or maliciously injuring another in his or her reputation, trade, business or profession" as set forth by the statute. The § 134.01 claim essentially rests on an allegation of conspiracy to convert Bruner property. Within each of these statutory causes of action, Bruner generally complained that it had "suffered other damages as a result of the alleged conspiracy, including but not limited to damage to Bruner's reputation, loss of goodwill, and customer confusion as to the source of the products."[7]

We fail to see, and R.A. Bruner fails to demonstrate, how Bruner's allegations involve either a "misappropriation of advertising ideas or style of doing business" or an "infringement of copyright, title or slogan." While R.A. Bruner cites authority addressing

together for the purpose of wilfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

[7] Bruner's § 134.01, STATS., claim contained essentially the same language:

R.A. Bruner [and others] . . . are liable to Bruner for the value of Bruner products converted and sold by the defendant and others in the course of the conspiracy, combination and association, and for other damages, including but not limited to damage to Bruner's reputation, loss of goodwill, and customer confusion as to the source of the products.

744

unfair competition and infringement of copyrights, he fails to make a connection between these legal theories and Bruner's alleged reputation damage, loss of goodwill and customer confusion. Furthermore, contrary to R.A. Bruner's characterization of the complaint, we find no allegation regarding "competition" or suggesting that competition precipitated Bruner's damages. Consequently, we are not persuaded that R.A. Bruner has met his burden of establishing that the claims fall within the policies' "advertising injury" coverage. *See Just v. Land Reclamation, Ltd.*, 151 Wis. 2d 593, 605, 445 N.W.2d 683, 688 (Ct. App. 1989), *rev'd on other grounds*, 155 Wis. 2d 737, 456 N.W.2d 570 (1990). Therefore, because we determine that R.A. Bruner has failed to meet his initial burden of establishing coverage, his position must fail.

## CONCLUSION

We conclude that Bruner's complaint does not state a claim that can be deemed an "occurrence" or an "advertising injury." Because we hold that the Insurers did not have a duty to defend or a duty to indemnify, there is no basis for R.A. Bruner's allegation of bad faith. *See Richland Valley Prods., Inc. v. St. Paul Fire & Cas. Co.*, 201 Wis. 2d 161, 177, 548 N.W. 2d 127, 134 (Ct. App. 1996). We affirm the judgments of the trial court.

*By the Court.*—Judgments affirmed.