WESTERN STATES INSURANCE COMPANY and United Security Insurance Company, Plaintiffs–Appellees,

v.

WISCONSIN WHOLESALE TIRE, INC., Defendant, Third–Party Plaintiff–Appellant,

v.

Richard Friedenberg, Klafter Insurance Agency Co. (doing business as Degeus & Klafter), and ABC Insurance Company, Third–Party Defendants.

No. 97–3918.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 20, 1998.[†]

Decided July 22, 1999.

Rehearing Denied Aug. 27, 1999.

---

† The appeal was orally argued on May 12, 1998. The submitted date marks the completion of briefing after the remand discussed in the text.

Carolyn J. Jones (submitted), Ian M. Sherman, Rooks, Pitts & Poust, Chicago, IL, for Plaintiffs–Appellees.

James E. Culhane (submitted), Davis & Kuelthau, Milwaukee, WI, for Wisconsin Wholesale Tire, Inc.

Before COFFEY, EASTERBROOK, and ROVNER, Circuit Judges.

PER CURIAM.

Last year the court remanded this case (see 148 F.3d 756) so that the district judge could give reasons for his decision, as Circuit Rule 50 requires. Now that the parties have filed supplemental memoranda responding to the judge's explanation, the appeal is ready for decision.

MITA Enterprises filed a suit charging two of its former sales representatives with taking copies of customer lists and using them to solicit business for Wisconsin Wholesale Tire, a newly formed rival. Eventually the suit was settled; Wisconsin Tire paid $100,000 to acquire the right to use the customer lists. Part of this sum,

though it is hard to say exactly how much, represents damages for the improper use before Wisconsin Tire bought rights to the intellectual property. Two insurance companies filed this suit under the diversity jurisdiction, seeking a declaration that they need not indemnify Wisconsin Tire on account of this settlement. Western States, one of the insurers, denies that it has issued any policy that insures Wisconsin Tire, and adds that its policies also don't cover this risk anyway. United Security Insurance, the other firm, plainly issued a policy to Wisconsin Tire, but it too contends that the policy does not cover disputes about customer lists. The district court's opinion on remand identifies two factual disputes that prevent resolution of the question whether Wisconsin Tire is an "insured" under Western States' policies. But the court granted summary judgment to both insurers after concluding that neither policy covers this risk.

■■■ United Security's policy, which the parties call a "garage policy," insures against "personal injury," a term defined to include "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Wisconsin Tire says that the garage policy covers the events because MITA's complaint accuses the former employees of "injuring MITA in its reputation." Both Illinois and Wisconsin give primacy to the allegations of the complaint when resolving disputes about the duty to defend. *Dixon Distributing Co. v. Hanover Insurance Co.,* 161 Ill.2d 433, 204 Ill.Dec. 171, 641 N.E.2d 395 (1994); *Smith v. Katz,* 218 Wis.2d 442, 578 N.W.2d 202 (1998). Although defense is no longer in issue, both parties have briefed the case as if duty-to-defend (rather than duty-to-indemnify) principles apply; it is therefore unnecessary to decide which state's law governs. The district judge concluded that the complaint does not activate the defamation clause of the garage policy because it does not allege defamation:

> MITA's complaint alleges that [the former employees] misappropriated customer lists and used them at Wisconsin Tire to compete with MITA. The bald allegation that MITA's reputation was harmed does not mandate advertising injury coverage as there is no indication in the complaint that the customer lists were used to show [that] MITA's product was in any way inferior.

That assessment is both factually accurate and legally conclusive. It is very hard to see how, even in principle, misappropriation of a customer list could be equated to slander or libel.

A thief could of course use the list to contact customers, and, having the customers' ears, slander his former employer. But the complaint does not hint at such a theory. MITA complained about the taking and use of the lists, a trade-secret theory of recovery, not about the details of the conversations its former employees had with the customers. If MITA suffered a reputational injury by this tort, the cause is likely to have been its customers' conclusion that it couldn't keep a secret. Modern pleading rules permit a plaintiff to expand the theory of his complaint, so MITA would have been entitled to make a defamation or disparagement claim later in the case. But until the plaintiff takes advantage of this opportunity, an insurer need not leap to the defense. Otherwise every complaint would activate every one of the defendant's insurance policies—for it is always *possible* that the plaintiff will elaborate its theory in a way that comes within a policy. Neither Wisconsin nor Illinois follows such an anything-goes approach. See *School District of Shorewood v. Wausau Insurance Cos.,* 170 Wis.2d 347, 488 N.W.2d 82 (1992); *Transcontinental Insurance Co. v. National Union Fire Insurance Co.,* 278 Ill.App.3d 357, 214 Ill. Dec. 934, 662 N.E.2d 500 (1st Dist.1996). A complaint need not use magic words, but

it must sketch a claim that is within the scope of the policy. MITA's complaint did not.

 Western States' umbrella policy, the remaining policy still at issue, covers (among other things) "advertising injury." Here is the policy's definition:

"Advertising injury" means injury arising out of your [i.e., Wisconsin Tire's] advertising activities of your own goods, products or services, and involving one or more of the following offenses committed during the policy period:

a. Oral or written publication of material that defames, slanders, or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Piracy, unfair competition, or misrepresentation of ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

Subparagraph (a) is functionally equivalent to the defamation clause of the garage policy, and given our conclusion that the garage policy does not cover the allegations of MITA's complaint, it follows that paragraph (a) does not do so either. Wisconsin Tire therefore relies on paragraph (c), asserting that MITA accused it of "piracy" and "unfair competition." This is a sensible characterization of MITA's complaint—but of course the "advertising injury" clause does not cover *all* piracy and unfair competition. It insures only those incidents of piracy and unfair competition that arise out of Wisconsin Tire's "advertising activities of [its] own goods, products or services". Applying Illinois law to this policy, the district court concluded that MITA's complaint had not alleged that Wisconsin Tire delivered an injury through the "advertising activities of [its] own goods, products or services". Wisconsin Tire pretty much ignores the choice-of-law question for this policy. It cites some Wisconsin cases and no Illinois cases in the section of its brief devoted to this subject. We need not get into the choice-of-law issues, because even Wisconsin law, the body most favorable to Wisconsin Tire, does not support its position.

Wisconsin Tire wants us to treat "advertising" as equivalent to "marketing." Then the work of a salesman in calling up customers is "advertising," an unnatural use of that word, and any effort to sell that involves one of the four listed "offenses" is covered. But why is this a sensible reading of the policy? Wisconsin reads ambiguities favorably to the insured, but it does not torture ordinary words until they confess to ambiguity. Deconstruction is not part of Wisconsin's approach to insurance contracts. MITA's complaint does not allege that Wisconsin Tire engaged in any advertising. Perhaps Wisconsin Tire did some advertising, if only in the Yellow Pages, but the "advertising injury" coverage applies only to "injury arising out of" the advertising, and there is a disconnect between that kind of advertising and the tort (the theft of trade secrets). See also *Erie Insurance Group v. Sear Corp.*, 102 F.3d 889 (7th Cir.1996) (Indiana law).

Two cases decided earlier this year show that Wisconsin gives "advertising injury" clauses an ordinary-language reading. When R.A. Bruner Co. was charged with conversion of business assets, and the improper use of these assets to promote its own business in competition with the plaintiff, it tendered the defense to an insurer under an "advertising injury" clause. *Bruner v. Heritage Cos.*, 225 Wis.2d 728, 593 N.W.2d 814 (1999), holds that conversion of business assets does not fall within an "advertising injury" clause that is identical in all material respects to the one in Western States' policy. In the second case, the insured was sued for making— and for advertising—bicycles that copied a

rival's protected design. After concluding that the plaintiff's harm arose out of the infringing design, which the advertising depicted accurately, the court held that the "advertising injury" clause did not supply coverage. *Diversified Investments Corp. v. Regent Insurance Co.*, 226 Wis.2d 563, 596 N.W.2d 502 (1999). An "advertising injury" clause operates only when there is something wrongful about the advertising, the court concluded. Any other approach would lead a fairly narrow clause to cover almost every injury connected with a business operation, a conclusion that the court thought implausible. Citing and following cases from many other jurisdictions, *Diversified Investments* held that only when advertising is an independently tortious source of injury does the "advertising injury" clause supply coverage. That principle forecloses Wisconsin Tire's claim. MITA's complaint did not seek recovery for anything Wisconsin Tire said in advertising. Like the insureds in *Diversified Investments* and *Bruner*, Wisconsin Tire wants to use the "advertising injury" clause to cover all wrongs that are enumerated in the subparagraphs, even if these wrongs do not arise out of the advertising. Wisconsin's courts have repudiated that position, so under *Erie* Wisconsin Tire must lose in federal court.

AFFIRMED.

ILANA DIAMOND ROVNER, J., dissenting.

The majority rejects the possibility of coverage in this case by focusing solely on the allegations of the complaint that address the misappropriation of the customer lists. Although those allegations comprise the core of the complaint in this case, they are not exhaustive of the allegations in this complaint. We have previously recognized that an insurer cannot avoid its duties of defense and indemnification by reference to the core or dominant character of the plaintiff's allegations. *Curtis–Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994). Instead, an insurer must defend if any conduct alleged in the complaint falls within the insurance policy, even if those allegations constitute only a "subordinate aspect" of the complaint. *Id.* Because other allegations in the complaint arguably involve conduct within the policy provisions, I am unwilling to join my brothers.

As the majority recognizes and all parties concede, this is a case involving the duty to defend, not the duty to indemnify. The duty to defend is broader than the duty to indemnify, and is triggered by *arguable,* not actual, coverage. *Bruner v. Heritage Companies,* 593 N.W.2d 814, 817 (Wis.App.Ct.1999). Thus, "[i]n determining an insurer's duty to defend, we apply the factual allegations present in the complaint to the terms of the disputed insurance policy.... We liberally construe those allegations and assume all reasonable inferences." *Doyle v. Engelke,* 219 Wis.2d 277, 580 N.W.2d 245, 248 (1998). Moreover, all doubt as to the existence of the duty to defend must be resolved in favor of the insured. *Wausau Tile, Inc. v. County Concrete Corp.,* 226 Wis.2d 235, 593 N.W.2d 445, 459 (1999).

Our starting point, therefore, is the complaint itself. The complaint alleges that: Wisconsin Tire made contact with numerous MITA customers via telephone, at personal meetings, and through print advertising, and was in direct competition with MITA; Wisconsin Tire, for the purpose of wilfully and maliciously injuring MITA in its reputation, trade, and business, conspired to engage in unfair competition and to injure MITA in its reputation, trade and business; and through those acts of personal contact and print advertising, MITA suffered severe damage to its reputation. Those allegations, along with all reasonable inferences, at least arguably fall within the "personal injury" provision of the United Security's garage policy, and the "advertising injury" provision of Western States' umbrella policy.

Personal injury under the garage policy includes "injury ... arising out of ... oral or written publication of material that slanders or libels ... [an] organization or disparages ... [an] organization's goods, products or services." The allegations above at least arguably involve personal injury under that definition, and that is all that is required. The complaint alleges that Wisconsin Tire acted through telephone contact, personal meetings and print advertising, which are sufficient to fall under the oral or written publication requirement of the definition. Moreover, the complaint alleges that Wisconsin Tire conspired to injure MITA in its reputation, and did in fact cause severe damage to MITA's reputation through, among other acts, the acts involving print advertising and personal contact. One can certainly infer from those allegations that Wisconsin Tire disparaged MITA's goods, products or services; in fact, that is the most obvious way that the contact would result in severe damage to its reputation. Unlike the majority, I cannot assume that the reputational injury was caused by MITA's "customers' conclusion that it [MITA] couldn't keep a secret." Maj. Op. at 701. That is pure speculation, and we are simply not at liberty to make such leaps of conjecture in this context. In fact, we are required to construe the complaint liberally in favor of the insured, but the majority appears to do just the opposite with that conclusion. Because the allegations of the complaint, taken with all reasonable inferences, arguably fall within the policy language, United Security had a duty to defend.

For similar reasons, Wisconsin Tire has succeeded in demonstrating potential coverage under the "advertising injury" provision of Western States' umbrella policy. The majority rejects this claim, holding that the complaint fails to allege any advertising, and that Wisconsin Tire wants us to treat advertising as including any calls by salesmen. The complaint, however, explicitly states that Wisconsin Tire engaged in "print advertising," and that

those actions as well as others resulted in severe damage to MITA's reputation. Those allegations are sufficient to raise an inference of an injury caused by advertising, even under a restrictive definition of that term.

This interpretation is more consistent with the broad interpretation given to complaints in other cases. For instance, in *Doyle*, the Wisconsin Supreme Court construed a clause in the policy that protected against bodily injury. 580 N.W.2d at 249–250. The policy defined bodily injury as "any physical harm, including sickness or disease...." The complaint in that case alleged that Doyle suffered "emotional distress" that was "disabling." The court held that those allegations were sufficient to fall within the policy, construing them liberally and interpreting the policy as including emotional and psychological harm.

Similarly, the Wisconsin Court of Appeals made clear the broad interpretation that is required in a duty to defend case in *Production Stamping Corporation v. Maryland Casualty Co.*, 199 Wis.2d 322, 544 N.W.2d 584 (1996). The issue in *Production Stamping* was whether a contamination of adjacent land occurred prior to 1986. The relevant facts alleged in the complaint were as follows: the corporation owned the property since 1960; the contamination was discovered in October 1990; the contamination occurred during the corporation's ownership; and the contamination existed for "a long time." *Id.* at 327–28, 544 N.W.2d 584. The court held that "giving Production Stamping the benefit of the doubt, as we must, these allegations are sufficient to allege that Production Stamping's discharge of the chemicals contaminated the adjoining landowner's property prior to January 1, 1986." *Id.* at 328, 544 N.W.2d 584. That case illustrates that even vague allegations can trigger the duty to defend if they allow for a reasonable inference of policy coverage. *See also Roman Catholic Diocese of Springfield v. Maryland Casualty Co.*, 139

F.3d 561 (7th Cir.1998). By contrast, the allegations in the present case are far more clearly within the policy provisions, because the allegations contain language directly implicating the policy provisions. When we consider reasonable inferences in addition to that language, we must conclude that the complaint at least triggered the duty to defend. Therefore, I respectfully dissent.