Lorna Amrhein and Cory Schaal, by his Guardian ad Litem, Christopher J. Stawski, Plaintiffs-Appellants, United Healthcare of Wisconsin, Inc., Subrogated-Plaintiff,
v.
Acuity, A Mutual Insurance Company, Defendant-Respondent,
No. 03-1519.
Court of Appeals of Wisconsin.
Dated and Filed February 18, 2004.
Raymond J. Caminata, Sr., Julie A. Caminata, and Nicholas Hoeft, Defendants.
Before Brown, Nettesheim and Snyder, JJ.
NETTESHEIM, J.
¶1. This appeal presents an insurance coverage issue. Cory Schaal was injured during an assault that took place near the residence of Raymond J. Caminata, Sr. during a party thrown for Raymond's daughter Julie A. Caminata. Schaal, by his guardian ad litem, appeals from a summary judgment granted in favor of Raymond's insurer, Acuity.[1] The complaint alleges that Raymond was negligent when he solicited a minor at the party, Nicholas Hoeft, to assault Schaal and that Raymond knew or should have known that Hoeft would react to Raymond's statements in a manner that would likely cause injury to Schaal. The trial court dismissed the case against Acuity at summary judgment. Schaal argues that the trial court erred (1) in finding that Raymond's acts were intentional and, thus, excluded from coverage under Acuity's policy and (2) in determining that Raymond was not entitled to coverage for his liability for Julie's actions under Wis. Stat. § 895.035.
¶2. We conclude that the facts, when viewed in the light most favorable to Schaal, would not support a finding of negligence on Raymond's part. Like the trial court, we hold that the entirety of Raymond's actions were intentional as a matter of law and thus excluded from coverage under Acuity's policy. We further conclude that the trial court did not err in its determination that Raymond is not entitled to coverage for his liability for Julie's intentional actions under Wis. Stat. § 895.035 because the incident was not an "occurrence" within the meaning of Acuity's policy.
¶3. We affirm the summary judgment in favor of Acuity.

BACKGROUND
¶4. While the parties sharply dispute the inferences to be drawn from the facts, they do not dispute the underlying history. On September 16, 2000, Hoeft, without provocation or permission, assaulted and battered Schaal, causing numerous injuries. The assault took place during a party hosted by the Caminatas in honor of Julie Caminatas's seventeenth birthday. Prior to the assault, Raymond falsely informed Hoeft that Schaal wanted to fight Hoeft. Raymond also told Hoeft that he would pay Hoeft to assault Schaal and would pay more money if Hoeft killed Schaal. Julie acted in concert with Hoeft in planning and carrying out the attack on Schaal, including determining when and how Hoeft would strike the first blow and informing him when to do so. As a result of Hoeft's assault, Schaal was permanently and seriously injured.
¶5. Schaal brought claims of intentional battery against Hoeft and aiding and abetting a battery against Julie. Schaal also claimed that Raymond was negligent (1) in failing to adequately and properly supervise the minors at the party he cohosted for Julie, (2) in failing to recognize that statements made to Hoeft would cause him to assault Schaal, and (3) in failing to take adequate steps to prevent attacks from occurring at his minor daughter's party. In addition, Schaal claimed that Raymond was responsible for Julie's actions under Wis. Stat. § 895.035, which governs parental liability for the intentional acts of their minor children.
¶6. In its answer and affirmative defenses, Acuity admitted that it had issued a policy of liability insurance to the Caminatas and that the policy was in existence at the time of the incident. However, Acuity alleged that the claims against the Caminatas were not covered by the Acuity policy due to the Intentional Act Exclusion, which precludes personal liability coverage for bodily injury which is "expected or intended by the insured." On January 28, 2003, Acuity filed a motion for summary judgment alleging, among other grounds, that (1) the negligent supervision claim was not covered because there was no special relationship between Raymond and Hoeft, (2) Raymond's solicitation of the assault was barred by the Intentional Acts Exclusion, and (3) the statutory claims were not covered due to the lack of an "occurrence" under the policy.
¶7. At the hearing on Acuity's motion for summary judgment, Schaal conceded that the Acuity policy did not provide coverage for his claim that Julie aided and abetted Hoeft in his battery of Schaal. As to Acuity's remaining challenges, Schaal argued that evidence allowed for the reasonable inference that Raymond's conduct was negligent and qualified as an "occurrence" under the policy.
¶8. The trial court granted Acuity's motion for summary judgment. The court stated, "[e]verything that's been described here would ... indicate that the conduct of Mr. Caminata can't be described as anything other than intentional conduct on his part." In so finding, the trial court compared Raymond's involvement in the assault to that of a party to the crime under Wis. Stat. § 939.05. Based on Raymond's intentional conduct, the trial court found that Acuity was not responsible for coverage. Likewise, the trial court found that Wis. Stat. § 895.035 did not create an "occurrence" under Acuity's policy because the attack on Schaal was intentional, not accidental.[2] Therefore, the trial court granted Acuity's motion for summary judgment. Schaal appeals.

DISCUSSION
¶9. When reviewing a summary judgment, we perform the same function as the trial court and our review is de novo. See Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). On summary judgment, a court must view the facts in the light most favorable to the nonmoving party. State Bank of La Crosse v. Elsen, 128 Wis. 2d 508, 512, 383 N.W.2d 916 (Ct. App. 1986). In other words, the inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. Grams v. Boss, 97 Wis. 2d 332, 338-39, 294 N.W.2d 473 (1980). "If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment." Id. at 339.
¶10. Interpretation and application of an insurance policy provision to undisputed facts is a question of law we determine de novo. Steven G. v. Herget, 178 Wis. 2d 674, 684, 505 N.W.2d 422 (Ct. App. 1993). When construing or applying an insurance policy, the policy must be "interpreted from the standpoint of what a reasonable person in the position of the insured would have understood" the policy provision to mean. Id.
¶11. Although Acuity's policy provides personal liability coverage, such coverage does not apply to bodily injury "[w]hich is expected or intended by the insured." An intentional acts exclusion precludes coverage if the following elements are shown: (1) the allegations plead an intentional act, and (2) the insured intended or expected some injury or harm to follow from that act. Bruner v. Heritage Cos., 225 Wis. 2d 728, 738, 593 N.W.2d 814 (Ct. App. 1999) (citing Raby v. Moe, 153 Wis. 2d 101, 110, 450 N.W.2d 452 (1990); Pachucki v. Republic Ins. Co., 89 Wis. 2d 703, 710, 278 N.W.2d 898 (1979)).
¶12. Schaal concedes that Raymond intentionally told Hoeft that Schaal wanted to fight him and that Raymond offered to pay Hoeft for fighting or killing Schaal. However, Schaal contends that "making inappropriate and false statements that may or may not lead one person to assault another is insufficient to allow the court to infer an intent to injure as a matter of law." As such, Schaal reasons that a material issue of fact exists as to whether Raymond was "substantionally certain" that Schaal would sustain injuries as a result of his actions. See Pachucki, 89 Wis. 2d at 710 ("the actor must intend the consequences of his acts, or believe that they are substantially certain to follow").
¶13. While the question of intent to harm is ordinarily an issue of fact for a jury, we have recognized circumstances that permit courts to infer such intent. Bruner, 225 Wis. 2d at 739. Intent to harm may be inferred if "the conduct alleged is of such a nature that injury or harm is substantially certain to result." Id. We may also infer intent "where a reasonable [person] in the defendant's position would believe that a particular result was substantially certain to follow." Id. (quoting K.A.G. v. Stanford, 148 Wis. 2d 158, 162-63, 434 N.W.2d 790 (Ct. App. 1988) (intent to harm was inferred from allegations of sexual assault of a child)). Furthermore, a person is "presumed to intend `the natural and probable consequences of his [or her] acts voluntarily and knowingly performed.'" Id. (citation omitted).
¶14. Schaal argues that the facts of this case are akin to those of Gouger v. Hardtke, 167 Wis. 2d 504, 482 N.W.2d 84 (1992). There the trial court granted summary judgment to the defendant based on its determination that defendant's actions were intentional as a matter of law and therefore the plaintiff's action for intentional tort exceeded the statute of limitations. Id. at 509-10. However, the supreme court reversed. Id. at 520.
¶15. The injury in Gouger occurred when two high school friends engaged in "hassling and teasing one another in a welding shop class." Id. at 508. At one point, Gouger threw a piece of soapstone at Hardtke and struck him in the head. Id. Hardtke then turned and saw Gouger laughing. Hardtke then picked up the piece of soapstone and threw it back at Gouger. The soapstone struck Gouger in the eye, damaging his cornea. Id. The trial court granted summary judgment based on its finding that Hardtke's conduct in throwing the soapstone was substantially certain to result in some injury and that it could infer intent as a matter of law. Id. at 509-10.
¶16. In reversing the trial court's ruling that the conduct was intentional as a matter of law, the supreme court stated:
The facts in this case do not warrant inferring as a matter of law that Hardtke intended to injure Gouger. The conduct of throwing a piece of soapstone at another person, even with the intent of hitting that person, is not so substantially certain to cause injury that a court may infer an intent to injure. Indeed, in light of the fact that Hardtke and Gouger were friends, it is equally or perhaps more reasonable to infer that Hardtke did not intend to injure Gouger.
....
In this case, the "horseplay" nature of the conduct in question, the fact that Gouger and Hardtke were friends at the time, and Hardtke's inconsistent pleading stating that he did not act intentionally cast sufficient doubt on Hardtke's credibility to create a genuine issue of material fact.
Id. at 514-15, 517-18.
¶17. We reject Schaal's reliance on Gouger. Schaal's injury did not result from horseplay between two friends, making it reasonable to assume that the injury was unintended. Instead, the injury was the result of an intentional battery by Hoeft against Schaal-a battery solicited by Raymond. Further, in Gouger, the plaintiff had filed an affidavit at summary judgment stating his belief that Hardtke did not intend to injure him or throw the soapstone at him and Hardtke himself had initially filed a response indicating that he had intended to hit Gouger but then responded that he had not intended to hurt Gouger. Id. at 509. In this case, there is no similar basis for uncertainty as to Raymond's actions. As noted, there is no evidence or reasonable inference of friendship between Raymond and Schaal-indeed the record indicates overt animosity between the two. Nor is there any dispute that Raymond intentionally made false statements to Hoeft regarding Schaal's intention to fight Hoeft.
¶18. Unlike the defendant in Gouger, Raymond's actions in this case allow for only one reasonable inference-that Raymond intended Schaal to suffer injury as a consequence of his intentional actions. Acuity correctly argues, pursuant to the supreme court's decision in Raby, that the intent to inflict injury may be inferred as a matter of law from the nature of the insured's intentional acts. See Raby, 153 Wis. 2d at 105. In holding that the defendant's actions in Raby were intentional as a matter of law, the court looked to previous discussions by the court regarding the intent which must be proven to invoke a policy exclusion for intentional acts.[3]
`Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does.... The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it....'
Id. at 111 (citing Pachucki, 89 Wis. 2d at 711) (first emphasis added). We now consider the facts of this case in light of this law.
¶19. Here, the undisputed evidence at summary judgment is that Raymond intentionally made false statements to Hoeft to incite him to fight Schaal and offered to pay Hoeft if he harmed Schaal. Not only do we conclude as a matter of law that Raymond intended injury to Schaal insofar as his statements to Hoeft unequivocally indicate that injury to Schaal was Raymond's desired outcome, we also conclude that a reasonable person in Raymond's position would believe that some kind of injury to Schaal was substantially certain to result from his comments to Hoeft.
¶20. Schaal appears to concede this point. In support of his negligence claim in his amended complaint, Schaal alleges that Raymond "knew or should have known that Hoeft would react to it in a manner that was likely to cause injury to Schaal." Nonetheless, when it comes to a determination as to whether Raymond's actions were intentional, Schaal contends that viewing the record most favorable to Schaal, "it cannot be stated that [Raymond] was substantially certain that Schaal would sustain an injury intentionally inflicted upon him by Hoeft as a result of [Raymond's] statements."
¶21. Acuity argues that Schaal's apparently conflicting positions result from an attempt to create coverage for an intentional action by pleading it as negligence, a practice that was rejected in Berg v. Fall, 138 Wis. 2d 115, 122 n.2, 405 N.W.2d 701 (Ct. App. 1987). We agree. We reject Schaal's attempt to recharacterize Raymond's intentional acts as negligence. We conclude that the summary judgment record allows for but one reasonable inference: Raymond's actions were intentional as a matter of law. Therefore, Acuity did not provide coverage pursuant to the Intentional Acts Exclusion provision of the Acuity policy, which bars coverage for bodily injury that is "expected or intended by the insured."
¶22. Schaal also alleged that Raymond was negligent in failing to supervise Hoeft. Schaal presents this as an independent basis for coverage, separate from Raymond's solicitation of Hoeft to commit the battery. We reject Schaal's attempt to "slice and dice" Raymond's conduct into these miniscule component parts. Instead, we agree with the trial court's statement that "[e]verything that's been described here would ... indicate that the conduct of Mr. Caminata can't be described as anything other than intentional conduct on his part." (Emphasis added.) The trial court made this statement at the outset of its ruling and was speaking not just to Raymond's solicitation of Hoeft to commit the battery, but to the entire gamut of Raymond's conduct, even to the point of branding the conduct criminal under the law of party to a crime. The court closed its ruling with the same observation: "[A]gain, the conduct as described and as raised in the complaint ... constitutes intentional conduct on the part of Mr. Caminata and can't be viewed as being negligent or accidental or otherwise creating an occurrence."
¶23. Therefore, assuming that Raymond failed to supervise Hoeft after the solicitation, we hold that the only reasonable inference is that this was a continuation of Raymond's intentional scheme to accomplish Hoeft's assault of Schaal.[4]
¶24. We next turn to Schaal's challenge to the trial court's determination that the Acuity policy also does not provide coverage for Schaal's claim under Wis. Stat. § 895.035(2), which renders parents liable "for personal injury attributable to a willful, malicious or wanton act of [their minor] child." Here again the trial court determined that the assault on Schaal was intentional and therefore could not be considered an "occurrence" under Acuity's policy.
¶25. Acuity's policy provides coverage for personal liability if a claim is made or a suit is brought "against an insured for damages because of bodily injury or property damage caused by an occurrence" to which coverage applies. Acuity's policy defines "occurrence" as "an accident including exposure to conditions, which results, during the policy period, in: a. Bodily injury; or b. Property damage." (Emphasis added.)
¶26. Schaal contends that there is a material issue of fact as to whether Julie's intentional acts constitute an "undesirable event" for which Raymond could reasonably expect coverage. In support, he cites to Doyle v. Engelke, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998), in which the court adopted a common definition of "accident" which included "`[a]n unexpected, undesirable event' or `an unforeseen incident' which is characterized by a `lack of intention.'" (Citing The American Heritage Dictionary of the English Language 11 (3rd ed. 1992).)
¶27. While we agree with Schaal that Julie's intentional actions brought about an "undesirable event," the definition of "accident" in Doyle requires that the undesirable event be unexpected or unforeseen and characterized by a "lack of intention." Here, the bodily injury to Schaal was not an accident. It was both intended and foreseeable. Julie acted in concert with Hoeft in planning and carrying out the attack on Schaal, including determining how Hoeft would strike the first blow and informing him when to do so. Just as Raymond intentionally solicited the attack, Julie intentionally aided and abetted it. A reasonable person in Raymond's position would not expect coverage for the intentional acts of his minor child, which contributed to an undesirable event which was expected, foreseen and sought by the insured.

CONCLUSION
¶28. Viewing the facts in a light most favorable to Schaal, we conclude that there is no material issue of fact in support of Schaal's claim that Raymond's conduct constituted mere negligence. Therefore, we agree with the trial court that the entire spectrum of Raymond's conduct was intentional as a matter of law and the Acuity policy does not provide coverage. We further conclude that Raymond is not entitled to coverage for any liability under Wis. Stat. § 895.035 for the intentional acts of his daughter.
By the Court.Judgment affirmed.
NOTES
[1] Schaal's mother was also a plaintiff and is also an appellant.
[2] In addition, the trial court dismissed certain of Schaal's claims on public policy grounds. Because we agree with the trial court's ruling that the Intentional Acts Exclusion of the policy barred Schaal's claims, we do not address the court's public policy rulings.
[3] In Raby v. Moe, 153 Wis. 2d 101, 106, 450 N.W.2d 452, 455 (1990), the insured, Terrance Moe, participated in a robbery as the driver of the "get away" car. Moe waited in the car while his accomplice entered a store alone with a loaded shotgun, took money from the cash register and shot and killed the store clerk, Steven Raby. Id. Raby's parents commenced a civil action against Moe and his insurance company, Heritage, seeking damages for his death. Id. at 107. The complaint alleged that Moe was negligent in planning and executing the robbery and that his negligence caused Raby's death. Id. Moe's insurance company, Heritage, filed a motion for summary judgment arguing that Moe's acts were excluded from coverage under the intentional acts exclusion. Id. at 108. Heritage maintained that the intent to injure necessary to invoke the exclusion could be inferred from the nature of Moe's intentional act of aiding and abetting the armed robbery as a matter of law. Id. The circuit court denied the motion, and the case ultimately proceeded to trial. Id.

Heritage appealed to the Wisconsin Supreme Court on the issue of whether the trial court erred in failing to grant summary judgment in its favor because the intent to injure could be inferred from the facts of the case as a matter of law. Id. at 108-09. The supreme court agreed with Heritage that the trial court should have granted summary judgment. Id. at 108, 114-15. The court held, "Moe must be held to know the substantial risk of injury inherent in his criminal wrongdoing and cannot expect his homeowners insurer to provide coverage for damages resulting from that wrongdoing simply by saying, after the fact, that he did not intend for any harm to result." Id. at 113.
The same logic applies here. Raymond is properly held to know the substantial risk of injury to Schaal because of his false representation to Hoeft that Schaal wanted to fight him and his concomitant offer to pay Hoeft money for an assault on Schaal.
[4] We therefore do not address Acuity's further argument that Raymond did not have a duty to supervise because the actual assault occurred off the Caminata premises. See Delavaux v. Vanden Langenberg, 130 Wis. 2d 464, 487, 387 N.W.2d 751 (1986).